STATE v. ROY E. PORTER.

(Filed 12 January, 1968.)

**1. Public Officers § 7—**

    A *de facto* officer is one who exercises the duties of his office under color of a known and valid appointment or election but who has not conformed to some precedent requirement or condition.

**2. Same—**

    The acts of a *de facto* officer are valid in law in respect to the rights of third persons or of the public.

**3. Same; Indictment and Warrant § 6—**

    The issuance of a warrant by a justice of the peace who had not given bond upon appointment to the office in compliance with G.S. 7-141.1 is the

act of a justice of the peace *de facto*, and the warrant is not subject to collateral attack.

**4. Criminal Law §§ 83, 162—**

A wife is incompetent to testify against her husband unless the evidence comes within the exceptions of G.S. 8-57, and where the wife is allowed to testify as to matters incriminating to her husband, it is the duty of the court to exclude the testimony notwithstanding defendant's lack of objection, and its failure to do so is reversible error.

**5. Criminal Law § 162—**

The failure to object in apt time to incompetent testimony will not be regarded as a waiver of objection where the evidence admitted is forbidden by statute.

APPEAL by defendant from *Carr, J.*, August 1967 Session of ALAMANCE.

Criminal action on a warrant charging defendant with assaulting Brenda Walker, a female person, by striking her in the face with his fist, he being a male person over eighteen years of age. From a conviction and sentence of imprisonment by the Municipal Recorder's Court in Burlington, defendant appealed to the Superior Court where he was tried *de novo*.

Plea: Not guilty. Verdict: Guilty as charged in the warrant.

From a sentence of imprisonment, defendant appeals to the Supreme Court.

*Attorney General T. W. Bruton and Assistant Attorney General George A. Goodwyn for the State.*

*John D. Xanthos for defendant appellant.*

PARKER, C.J. Defendant contends that the warrant upon which he was tried was issued by a justice of the peace and was void, because the justice of the peace at the time of the issuance of the warrant had not given a bond as provided by G.S. 7-114.1. Subsection (a) of that statute reads as follows:

"(a) Amount and Conditions; Premiums. — Every justice of the peace shall, before exercising any of the functions of his office, furnish a bond, either corporate or personal, with good and sufficient surety, approved by the clerk of the superior court, in the amount of one thousand dollars ($1,000.00) payable to the State of North Carolina and conditioned upon the faithful performance of his duties and upon a correct and proper accounting for all funds coming into his hands by virtue or color of his office. Premiums on such bonds shall be paid by the justice of the peace concerned."

Subsection (b) of that statute reads as follows:

> "(b)  Penalty for Violation. — Any person exercising any of the official functions of a justice of the peace without having first complied with the provisions of this section shall be subject to a penalty of one hundred dallors ($100.00) for every such violation, such penalty to be recoverable in a civil action by any taxpayer of the county in which such violation occurs."

The justice of the peace who issued the warrant in this case was Daniel S. Walker. The record shows that he was duly appointed to the office of justice of the peace for a term of one year beginning on the 1st day of April 1967 and ending on the 1st day of April 1968. The affidavit upon which the warrant was issued was sworn to and subscribed before Daniel S. Walker, justice of the peace, on 15 June 1967, and the warrant was issued by him on the same day. Walker filed his official bond as a justice of the peace on 19 June 1967 at 11:30 a.m., approximately four days after the issuance of the warrant. This being true, Daniel S. Walker was a *de facto* justice of the peace under the rule that a person is a *de facto* officer where the duties of the office were exercised "under color of a known and valid appointment or election, but where the officer failed to conform to some precedent requirement or condition, as to take an oath, give a bond, or the like." *S. v. Lewis,* 107 N.C. 967, 12 S.E. 457, 13 S.E. 247, 11 L.R.A. 105; *Hinson v. Britt,* 232 N.C. 379, 61 S.E. 2d 185. The words in quotation marks set forth in *S. v. Lewis, supra,* are quoted from the scholarly and exhaustive opinion by Chief Justice Butler of the Supreme Court of Connecticut in the leading case of *S. v. Carroll,* 38 Conn. 449, 9 Am. Rep. 409.

A comprehensive definition of a *de facto* officer is found in *Waite v. Santa Cruz,* 184 U.S. 302, 323, 46 L. Ed. 552, 566, as follows:

> ". . . A *de facto* officer may be defined as one whose title is not good in law, but who is in fact in the unobstructed possession of an office and discharging its duties in full view of the public, in such manner and under such circumstances as not to present the appearance of being an intruder or usurper. When a person is found thus openly in the occupation of a public office, and discharging its duties, third persons having occasion to deal with him in his capacity as such officer are not required to investigate his title, but may safely act upon the assumption that he is a rightful officer."

The same general idea has been expressed by this Court in *S. v. Lewis, supra.*

The acts of a *de facto* officer are valid in law in respect to the

public whom he represents and to third persons with whom he deals officially. *In re Wingler,* 231 N.C. 560, 58 S.E. 2d 372; *Hinson v. Britt, supra.*

We held as far back as 1844 in an opinion bearing the illustrious name of Chief Justice Ruffin in the case of *Gilliam v. Reddick,* 26 N.C. 368, as correctly summarized in the headnote, as follows:

> "The acts of officers *de facto,* acting openly and notoriously in the exercise of the office for a considerable length of time, must be held as effectual, when they concern the rights of third persons or the public, as if they were the acts of rightful officers."

In *State of Delaware v. Ronald D. Pack* (Superior Court of Delaware), 188 A. 2d 524, the Court held, under a statute substantially similar to our G.S. 7-114.1, as correctly summarized in the second headnote, as follows:

> "A party who was properly appointed to office of justice of the peace under a valid certificate of appointment under which he took office and exercised powers thereof openly and notoriously for about two months was a *de facto* officer, and his official act in hearing and disposing of charge against defendant of operating an automobile at an excessive rate of speed could not be attacked collaterally by defendant through motion to dismiss the information on ground such party was not a justice of the peace on date of the trial in that he had failed to file statutory bond."

In *People v. Payment,* 109 Mich. 553, 67 N.W. 689, the Court held, as correctly summarized in the first headnote in the North Western Reporter series:

> "Notwithstanding How. Ann. St. § 649, providing that every office shall become vacant on the neglect of the officer to deposit his oath of office or official bond in the manner and within the time prescribed by law, a justice of the peace is a *de facto* officer, though he does not file his oath of office and bond within the time stipulated by sections 767-769."

See to the same effect: *Canty v. Bockenstedt,* 170 Minn. 383, 212 N.W. 905; *Cox v. State* (Criminal Court of Appeals of Oklahoma), 206 P. 2d 1005.

In *In re Wingler, supra,* the Court said:

> "For all practical purposes, a judge *de facto* is a judge *de jure* as to all parties other than the State itself. His right or

title to his office cannot be impeached in a *habeas corpus* proceeding or in any other collateral way. It cannot be questioned except in a direct proceeding brought against him for that purpose 'by the Attorney-General in the name of the State, upon his own information or upon the complaint of a private person,' pursuant to the statutes embodied in Article 41 of Chapter 1 of the General Statutes. So far as the public and third persons are concerned, a judge *de facto* is competent to do whatever may be done by a judge *de jure.* In consequence, acts done by a judge *de facto* in the discharge of the duties of his judicial office are as effectual so far as the rights of third persons or the public are concerned as if he were a judge *de jure.* The principles enunciated in this paragraph arose at common law, and have been accorded full recognition in this State. (Citing numerous authority.)"

It cannot be gainsaid that Daniel S. Walker was at least a justice of the peace *de facto* when he issued the warrant in the instant case. The Court in *In re Wingler, supra,* further said:

"The *de facto* doctrine is indispensable to the prompt and proper dispatch of governmental affairs. Endless confusion and expense would ensue if the members of society were required to determine at their peril the rightful authority of each person occupying a public office before they invoked or yielded to his official action. An intolerable burden would be placed upon the incumbent of a public office if he were compelled to prove his title to his office to all those having occasion to deal with him in his official capacity. The administration of justice would be an impossible task if every litigant were privileged to question the lawful authority of a judge engaged in the full exercise of the functions of his judicial office."

The issuance of the warrant in this case was effectual in law, for Daniel S. Walker was at least a justice of the peace *de facto* when he issued the warrant. His issuance of the warrant cannot be collaterally attacked, because the acts done by him as a justice of the peace *de facto* in issuing this warrant are as effectual so far as the rights of third persons or the public are concerned as if he were a justice of the peace *de jure.* The *de facto* doctrine was introduced into the law as a matter of policy and necessity, to protect the interests of the public and individuals, where those interests were involved in the official acts of persons exercising the duties of an office, without being lawful officers. The public cannot reasonably be compelled to inquire into the title of an officer, nor be compelled to show

a title, and these have become settled principles in the law. In 1461, on the accession of Edward IV, Parliament declared the previous Henrys of Lancaster usurpers, but to avoid great public mischief, also declared them Kings *de facto,* and persons were punished in that reign for treason to Henry VI, not in aid of the lawful claimant of the crown. 1 Blackstone's Commentaries (reprint of the first edition, London, 1966) 197. Defendant's contention that the warrant in this case was void because the justice of the peace at the time of the issuance of the warrant had not given a bond as provided by G.S. 7-114.1 finds no support in our decisions, or in the law elsewhere, and is untenable.

A study of the record shows that the State offered plenary evidence sufficient to carry the case to the jury.

Defendant assigns as error that defendant's wife, Betty Porter, was called by the State as a witness and testified against him as follows:

> "That her name is Betty Porter and she is the wife of the defendant; that they have been married six years; that they were married April 1; that she was at home when the defendant was accused of assaulting her sister; that she saw what happened."

By the provisions of G.S. 8-57 defendant's wife was not competent as a witness to testify against him in this trial except to prove the fact of marriage and in other respects not material here. *S. v. Cotton,* 218 N.C. 577, 12 S.E. 2d 246; *S. v. Dillahunt,* 244 N.C. 524, 94 S.E. 2d 479. The defendant was not represented by counsel in his trial in the Superior Court and did not except to his wife's testimony. In this Court he is represented by counsel and he excepts to this testimony and assigns it as error. Ordinarily, failure to object in apt time to incompetent testimony will be regarded as a waiver of objection, and its admission is not assignable as error, but this rule is subject to an exception where the introduction or use of the evidence is forbidden by statute as here by the provisions of G.S. 8-57. When the evidence rendered incompetent by statute was admitted, it became the duty of the trial judge to exclude the testimony, and his failure to do so must be held reversible error whether exception was noted or not. *S. v. Warren,* 236 N.C. 358, 72 S.E. 2d 763.

While the testimony of defendant's wife does not contain a direct and positive statement of guilt on the part of her husband, the inference is unmistakably incriminating and harmful.

For the admission in evidence of the testimony of defendant's wife, defendant is entitled to a

New trial.