THE PEOPLE OF THE STATE OF NORTH CAROLINA EX REL. RANDY D. DUNCAN v. BENJAMIN H. BEACH, L. OLIVER NOBLE, JR., THE NORTH CAROLINA STATE BOARD OF ELECTIONS, THE HONORABLE JAMES B. HUNT, JR., GOVERNOR OF THE STATE OF NORTH CAROLINA

No. 22

(Filed 17 April 1978)

1. Judges § 4; Elections § 10; Public Officers § 3— ineligibility of election winner to serve as judge—no right to office by losing candidate

Votes cast for an ineligible candidate who received a majority of the votes in an election for district court judge, though not effective to give him legal entitlement to the office, were nonetheless legally effective to exclude his defeated opponent from entitlement to that office, and neither candidate, therefore, had *de jure* title to the office of district court judge by virtue of the election.

2. Elections § 10; Public Officers § 3— ineligibility of majority candidate— knowledge of ineligibility by voters

The ineligibility of a candidate receiving the majority of votes in an election does not elect the candidate receiving a minority of the votes regardless of whether the voting public had knowledge of the majority candidate's ineligibility.

**3. Public Officers § 7— ineligibility to serve as judge—de facto judge**

A person who received a majority of the votes in an election for district court judge, was sworn in and assumed the duties of that office, but who was ineligible to hold that office because of his age, did not hold the office *de jure* but was a *de facto* judge.

**4. Public Officers § 7— judge de jure**

A judge *de jure* exercises the office of judge as a matter of right and must satisfy three requirements: (1) he must possess the legal qualifications for the judicial office in question; (2) he must be lawfully chosen to such office; and (3) he must have qualified himself to perform the duties of such office according to the mode prescribed by law.

**5. Public Officers § 7— judge de facto**

A judge *de facto* is one who occupies a judicial office under some color of right and for a time performs its duties with public acquiescence though having no right in fact.

**6. Public Officers § 7— usurper in office**

A usurper in office is one who takes possession of an office and undertakes to act officially without any authority, either actual or apparent, and since he is not an officer at all or for any purpose, his acts are absolutely void and can be impeached at any time in any proceeding.

**7. Public Officers § 7.1— acts of de facto officer—validity of acts**

The acts of a *de facto* officer are valid as to the public and third persons.

**8. Judges § 4; Public Officers § 3— ineligibility of election winner to serve as judge— no right of loser to office—vacancy—appointment by Governor**

Where a candidate for district court judge who was ineligible under G.S. 7A-4.20(a) to hold that office because he had reached the age of 70 years before the election received a majority of the votes cast, was sworn in and assumed the duties of the office, and resigned upon the discovery of his ineligibility after having served as a *de facto* judge for over two years, the incumbent who was defeated in the election had no legal right to assume the office by virtue of the election and did not hold over in office by virtue of G.S. 128-7; therefore, the resignation of the ineligible judge created a vacancy in the office of district court judge which was properly filled by an appointment made by the Governor. Art. IV, § 19 of the N. C. Constitution.

ON plaintiff-relator's petition for discretionary review, prior to determination by the Court of Appeals, of summary judgment for defendants entered by *Godwin, J.*, at the 5 July 1977 Session of WAKE Superior Court.

This is an action in the nature of *quo warranto* to determine conflicting claims to the office of District Court Judge, Twenty-Fifth Judicial District of North Carolina.

Judge Godwin, after hearing on the motion of plaintiff-relator for summary judgment and cross motion of defendants for summary judgment, concluded, *inter alia*:

"That the appointment by the Defendant Governor Hunt of Defendant L. Oliver Noble, to fill the vacancy created by the resignation of Defendant Beach was lawful and proper and constituted a regular appointment under the laws and Constitution of the State."

Thereupon, Judge Godwin entered summary judgment for defendants dismissing plaintiff's action. Plaintiff-relator gave notice of appeal to the Court of Appeals. We allowed plaintiff's petition for discretionary review under G.S. 7A-31, prior to determination by the Court of Appeals.

*Attorney General Rufus L. Edmisten by Assistant Attorney General James Wallace, Jr. for the State, appellee.*

*Isenhower and Long by David L. Isenhower and Samuel H. Long, III for plaintiff appellant.*

MOORE, Justice.

The uncontested facts of this case are as follows:

On 26 April 1973, the plaintiff-relator, Randy D. Duncan, was lawfully appointed to fill the office of Judge of the General Court of Justice, District Court Division, Twenty-Fifth Judicial District of the State of North Carolina. He held said office until 30 November 1974 when he was replaced in office by defendant, Benjamin H. Beach.

In the General Election of 5 November 1974, the plaintiff was the duly qualified nominee of the Republican Party for the office of District Court Judge, Twenty-Fifth Judicial District. The defendant Benjamin H. Beach was the certified nominee of the Democratic Party for that judicial seat then held by plaintiff Duncan. There were no other candidates for the office.

Defendant Beach obtained a majority of the votes in that election, approximately 29,701 votes as opposed to the approximate 26,157 votes cast for plaintiff-relator. Plaintiff Duncan served until 30 November 1974, the end of his term, and on 2 December 1974 defendant Beach was sworn in and assumed the office of district court judge without objection from plaintiff.

Prior to this election, defendant Beach had attained the age of seventy (70) years, on 7 April 1974, and thus under G.S. 7A-4.20(a) was not eligible at the time of his election to hold the office of district court judge. This fact was not known by plaintiff-relator, nor was it called to the attention of the State Board of Elections or the general public. Defendant Beach was thus certified by the State Board of Elections as the nominee of his party, and, after the election, he was duly sworn into office. Beach served as district court judge until 31 March 1977, at which time he resigned at the request of the North Carolina Administrative Office of the Courts due to his ineligibility to hold office by virtue of his age. Thereafter, the defendant, Honorable James B. Hunt, Jr., as Governor of the State of North Carolina, appointed defendant L. Oliver Noble, Jr. to the judgeship vacated by defendant Beach. Judge Noble took the oath of office on 2 May 1977, and is presently serving in that capacity.

[8] The plaintiff-relator claims that, because defendant Beach was ineligible to hold office prior to and at the time of the 1974 election due to his age, he, Duncan, is entitled to that position. The relief he seeks is the ouster of Noble and his own installation in the office. Plaintiff-relator advances basically three arguments for his entitlement to the office. The arguments rest on his claim that he holds *de jure* title to the office.

Plaintiff's first argument for his claim of entitlement is as follows: G.S. 7A-4.20(a) provides that no judge of the superior or district courts may continue in office beyond the last day of the month in which he attains his seventieth birthday. Plaintiff contends that this statute implies that no person who has attained seventy years is legally qualified to serve as district court judge, and further implies that any person who is seventy years or older is not qualified to seek the office of district court judge by means of his election thereto. This being the case, plaintiff says, defendant Beach's nomination to the office was therefore a nullity, for he was not a legally qualified candidate. Plaintiff Duncan was thus the only legally qualified candidate for office. G.S. 163-110 holds that a sole candidate for a nomination is declared to be nominated. Plaintiff argues that, analogously, where there is only one qualified candidate for election, he should be declared elected—the choice of the voters.

Alternatively, plaintiff argues that, since defendant Beach was ineligible to hold office, and thus ineligible to seek office, the votes cast for him are a nullity and cannot be counted. The candidate receiving the next highest number of votes, in this case plaintiff, is therefore elected to office.

Plaintiff's final argument for his entitlement to office is based on his reading of G.S. 128-7. This statute says, "All officers shall continue in their respective offices until their successors are elected or appointed, and duly qualified." Plaintiff argues that he, as the incumbent, had the statutory right to continue in office until his successor was *legally* elected and qualified. Since defendant Beach was not qualified to hold office, he could not be legally elected thereto. Thus, plaintiff insists that he continued to hold *de jure* title to the office.

The conclusion to all of these arguments advanced by plaintiff is that he continues to hold *de jure* title to the office of district court judge. Article IV, Section 19, of the North Carolina Constitution says that the Governor shall fill all vacancies of office by appointment. Plaintiff argues, however, that there has been no vacancy in the office. That is, since he either held over in office under G.S. 128-7 or was duly elected by virtue of his being the sole qualified candidate, he must still hold *de jure* title to the office; thus the resignation of defendant Beach in 1977, while a factual "vacating" of the office, did not create a legal "vacancy". Thus, plaintiff insists, the Governor's appointment of defendant Noble to fill the position vacated by Beach was unlawful, and this Court should order Noble removed from office and have plaintiff installed in his stead.

In his brief, plaintiff argues that "where there is only one qualified candidate for election, it is far more in keeping with the democratic process and with the general rule of law that the sole qualified candidate be declared elected pursuant to his receipt of a majority of the legal votes rather than the office to be declared vacant, leaving the selection of the public servant not to the people but to the executive. . . ." This appeal to "the democratic process" is a sword which cuts both ways. For the inescapable fact in this case is that defendant Beach received a majority of the votes in the General Election on 5 November 1975. Regardless of whether defendant Beach was qualified to run, the one clear

result of this election is that the plaintiff was rejected by the voters of the Twenty-Fifth Judicial District.

It has been said that "it is a fundamental idea in all republican forms of government that no one can be declared elected and no measure can be declared carried unless he or it receives a majority or a plurality of the legal votes cast in the election." 29 C.J.S., Elections § 243, and cases cited therein. *See also State ex rel. Spruill v. Bateman*, 162 N.C. 588, 77 S.E. 768 (1913). Accordingly, numerous courts have held that when a majority or plurality of votes are cast for an ineligible candidate, the fact that the winning candidate is ineligible and not qualified to take office does not entitle the runner-up to be declared elected to the contested office. *See generally* 29 C.J.S., Elections § 243, n. 93, and cases cited therein. The votes cast for an ineligible candidate, though not effective to entitle him to the office, are nonetheless not void; they are to be given effect in determining the result of the election as regards the other candidates. *Cf. Clark v. Porter*, 223 Ark. 682, 268 S.W. 2d 383; *State v. Stacy*, 263 Ala. 185, 82 So. 2d 264.

This Court, in *State ex rel. Spruill v. Bateman, supra*, has held accordingly. In that case the runner-up in the election, Spruill, alleged the winner's (Bateman's) ineligibility for office. The Court, in ruling on this objection, said:

> ". . . Bateman having received the largest number of votes, Spruill was not elected. If Bateman is disqualified to act, there must be a resort to the process of filling the office, in case of a vacancy. . . . When the candidate receiving the highest vote is ineligible, that cannot make his opponent, who has been rejected by them, the choice of the people.

* * *

> "[A] candidate who receives fewer votes than are received by some other candidate cannot be said, under any circumstances, to be elected."

*See also Cole v. Sanders*, 174 N.C. 112, 115, 93 S.E. 476, 477 (1917).

[1] Applying these principles to the case at hand, the approximate 29,701 votes cast for defendant Beach, though not effective to give him legal entitlement to office because of his age, were nonetheless legally effective in excluding plaintiff Duncan from

entitlement to that office. Neither candidate, therefore, had *de jure* title to the office of district court judge by virtue of the November 1974 election.

[2]　Plaintiff argues, however, that since defendant's birth certificate was on file in the Caldwell County Registry, the age of defendant was a matter of public knowledge; and, that it has been held that where the voters have knowledge of the ineligibility of a candidate, the votes cast for him must not be counted, and the candidate receiving the next highest number of votes is deemed selected (citing *State ex rel. Schmidt v. White*, 257 Wisc. 560, 44 N.W. 2d 523 (1950)). Here plaintiff argues the English rule, adopted by but a few jurisdictions in the United States. The American rule, adopted by a majority of jurisdictions, holds that knowledge by the public of a candidate's ineligibility is immaterial. *See generally* 26 Am. Jur. 2d, Elections § 294; 133 A.L.R. 319. Were this Court to adopt the English rule, plaintiff's position would not be improved. For those jurisdictions following the English rule hold that knowledge by the voters will not be presumed, but must be proven; notice of the disqualifying fact, and of the legal effect of it, must be given so directly to the voter that he can be charged with actual knowledge. *See generally* Annot. 133 A.L.R. at 346, and cases cited therein.

In any case, the clear implication of *State ex rel. Spruill v. Bateman, supra*, is that this State follows the American rule. In *Bateman*, the Court said, quoting Throop on Public Officers, Sec. 163: "In this country the great current of authorities sustains the doctrine that the ineligibility of the majority candidate does not elect the minority candidate. And this without reference to the question whether the voters knew of the ineligibility of the candidate for whom they voted. It is considered that in such a case the votes for the ineligible candidate are not void." 162 N.C. at 589-90. Thus, whether the public had knowledge of defendant Beach's ineligibility is immaterial.

[3]　Defendant Beach assumed office on his being sworn in on 2 December 1974. Being ineligible to hold office by virtue of G.S. 7A-4.20(a), he did not hold office *de jure*. Judge Beach was, however, as plaintiff concedes, a judge *de facto*.

[4]　A judge *de jure* exercises the office of judge as a matter of right. In order to become a judge *de jure* one must satisfy three

requirements: (1) He must possess the legal qualifications for the judicial office in question; (2) he must be lawfully chosen to such office; and (3) he must have qualified himself to perform the duties of such office according to the mode prescribed by law. *In re Wingler*, 231 N.C. 560, 58 S.E. 2d 372 (1950); *Norfleet v. Staton*, 73 N.C. 546 (1875).

[5]   A judge *de facto* is defined as "one who occupies a judicial office under some color of right, and for the time being performs its duties with public acquiescence, though having no right in fact. . . ." *In re Wingler, supra*, at 563. In order for one to be deemed a judge *de facto*, he must have satisfied the following four conditions:

> "(1) He assumes to be the judge of a court which is established by law; (2) he is in possession of the judicial office in question, and is discharging its duties; (3) his incumbency of the judicial office is illegal in some respects; and (4) he has at least a fair color of right or title to the judicial office, or has acted as its occupant for so long a time and under such circumstances of reputation or acquiescence by the public generally as are calculated to afford a presumption of his right to act and to induce people, without inquiry, to submit to or invoke official action on his part on the supposition that he is the judge he assumes to be." *In re Wingler, supra*, at 563.

The General Assembly has conferred express approval on the judicial doctrine of *de facto* office by enacting G.S. 128-6, which provides that "Any person who shall, by the proper authority, be admitted and sworn into any office, shall be held, deemed, and taken, by force of such admission, to be rightfully in such office until, by judicial sentence, upon a proper proceeding, he shall be ousted therefrom, or his admission thereto be, in due course of law, declared void."

[6, 7]   A usurper in office is distinguished from a *de facto* officer in that a usurper takes possession of office and undertakes to act officially without any authority, either actual or apparent. Since he is not an officer at all or for any purpose, his acts are absolutely void, and they can be impeached at any time in any proceeding. *In re Wingler, supra; State v. Shuford*, 128 N.C. 588, 38 S.E. 808 (1901); *Van Amringe v. Taylor*, 108 N.C. 196, 12 S.E. 1005 (1891);

*Keeler v. Newbern*, 61 N.C. 505 (1868). The acts of a *de facto* officer are, however, valid as to the public and third persons. *Norfleet v. Staton, supra.* Thus, "So far as the public and third persons are concerned, a judge *de facto* is competent to do whatever may be done by a judge *de jure*. In consequence, acts done by a judge *de facto* in the discharge of the duties of his judicial office are as effectual so far as the rights of third persons or the public are concerned as if he were a judge *de jure.* . . ." *In re Wingler, supra*, at 563. See cases cited therein. Judge Beach satisfied the requirements of a *de facto* judge and also the provisions of G.S. 128-6; accordingly, his judicial acts while in office are valid.

[8]   After having served as a judge *de facto* for over two years, and upon the discovery of his legal infirmity, Judge Beach resigned from office on 31 March 1977. His resignation from office created an actual vacancy in that position. *See Atkins v. Fortner*, 236 N.C. 264, 72 S.E. 2d 594 (1952). Having been defeated in the November 1974 election, plaintiff had no legal right to assume office by virtue of the election. Furthermore, having vacated and surrendered the office to the defendant in 1974 without contesting defendant's right to it, plaintiff had no rights under G.S. 128-7, or under case law, to reassume office. *Cf. Williams v. Somers*, 18 N.C. 61 (1834). Hence, upon the resignation of Judge Beach, there was no one legally entitled to hold office by virtue of an election, nor under G.S. 128-7 was there an incumbent with the legal right to continue in office until a successor was elected or appointed. Judge Beach's resignation, therefore, created a legal as well as an actual vacancy in office under Article IV, Section 19, of the North Carolina Constitution. When such vacancy occurred, it was the duty of the Governor, under this constitutional provision, to appoint someone to fill the vacancy. The Governor performed his duty by the appointment of L. Oliver Noble to the position of District Court Judge for the Twenty-Fifth Judicial District, and Judge Noble rightfully occupies that position at this time.

Hence, the summary judgment for defendants entered by the trial judge is affirmed.

Affirmed.