DAY'LE LATHON, Employee, Plaintiff v. CUMBERLAND COUNTY, Employer, SELF-INSURED (KEY RISK MANAGEMENT SERVICES, Servicing Agent), Defendants

No. COA06-912

(Filed 19 June 2007)

## 1. Workers' Compensation— opinion filed after term of commissioner expired—validity—holdover—de facto officers

The Industrial Commission's opinion and award in a workers' compensation case was not void even though it was filed after the terms of two of the commissioners on the panel deciding plaintiff's case had expired, because: (1) under N.C. Const. art. VI, § 10, N.C.G.S. § 128-7, and *State ex rel. Martin v. Preston*, 325 N.C. 438 (1989), the two commissioners were still prop-

**LATHON v. CUMBERLAND CTY.**

[184 N.C. App. 62 (2007)]

erly serving since they continue to hold their positions upon expiration of their term until other appointments are made; (2) nothing in the record indicated that defendants raised the issue of the validity of the commissioners' ongoing tenures in office before the full Commission as required by N.C. R. App. P. 10(b)(1); and (3) even if under *Estes v. N.C. State Univ.*, 117 N.C. App. 126 (1994), the Commissioners were unable to continue serving after their terms expired, the fact that they continued to publicly discharge their duties as Commissioners rendered them de facto officers.

**2. Workers' Compensation— findings of fact—ninety-five percent of job is keyboarding or handwriting affidavits**

The Industrial Commission did not err in a workers' compensation case by finding that ninety-five percent of plaintiff employee's job is keyboarding or handwriting affidavits, because: (1) defendants concede that this finding is supported by plaintiff's own testimony; and (2) the finding cannot be disturbed on appeal regardless of whether there is also evidence to the contrary.

**3. Workers' Compensation— findings of fact—credibility of doctor's testimony**

The Industrial Commission did not err in a workers' compensation case by finding that a doctor's testimony was credible rather than agreeing with the deputy commissioner that the testimony should not be accepted as credible, because: (1) the Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony; and (2) the Court of Appeals cannot review the Commission's credibility determination.

**4. Workers' Compensation— findings of fact—occupational disease—carpal tunnel syndrome**

The Industrial Commission did not err in a workers' compensation case by finding that plaintiff employee contracted an occupational disease from her work duties, because: (1) although carpal tunnel syndrome is not specifically listed as an occupational disease in N.C.G.S. § 97-53, it falls within the catchall provision of N.C.G.S. § 97-53(13); (2) the Commission's findings are supported by a doctor's testimony even though defendants have pointed to contrary testimony; and (3) the findings of fact support the Commission's conclusion.

Judge TYSON dissenting.

**LATHON v. CUMBERLAND CTY.**

[184 N.C. App. 62 (2007)]

Appeal by defendants from opinion and award entered 7 April 2006 by the North Carolina Industrial Commission. Heard in the Court of Appeals 21 February 2007.

*MacRae, Perry & MacRae, L.L.P., by Daniel T. Perry, III, for plaintiff-appellee.*

*Teague, Campbell, Dennis & Gorham, L.L.P., by Dayle A. Flammia and Bradley G. Inman, for defendants-appellants.*

GEER, Judge.

Defendants Cumberland County and Key Risk Management Services appeal from an opinion and award of the North Carolina Industrial Commission concluding that plaintiff Day'le Lathon is entitled to workers' compensation benefits as a result of carpal tunnel syndrome plaintiff developed while working for defendant Cumberland County. On appeal, defendants argue that the Commission's opinion and award is void because it was filed after the terms of two of the commissioners on the panel deciding plaintiff's case had expired. Because, however, defendants did not raise this issue before the Full Commission, it has not been properly preserved for appellate review. Further, defendants' remaining arguments regarding the merits of plaintiff's claim address only questions of credibility and weight to be given evidence and, therefore, under our standard of review, do not present a basis for reversal. Consequently, we affirm the opinion and award of the Commission.

## Facts

Plaintiff, who was 40 years old at the time of the hearing before the deputy commissioner, had been the Assistant Director of Pretrial Services for the County since 1999. In this position, plaintiff prepared reports, supervised other employees, and entered data. Plaintiff, who is right-handed, began to notice tingling, numbness, and swelling in her left hand in December 2001.

Defendants referred plaintiff to Occupational Health Services on 8 February 2002, where nerve conduction studies were "normal." Plaintiff was later referred to orthopedist Dr. Louis Clark at the Cape Fear Orthopaedic Clinic, who examined plaintiff for complaints related to pain and spasms in both hands and twitching in her fingers. Dr. Clark did not believe he could help plaintiff surgically and referred her to a rheumatologist, Dr. Maria Watson.

Dr. Watson concluded that plaintiff did not have rheumatoid or inflammatory arthritis, but rather diagnosed plaintiff as suffering from tendinitis. Dr. Watson explained in her deposition:

> She actually had tendinitis secondary to overuse and hand pain, again, using the keyboard at work. She does not do a lot of home work that would cause this. My belief is that her job is the primary cause of her problem. I have suggested that she will need to have things changed at work if her tendinitis is to get better.

After plaintiff's counsel asked her to assume that plaintiff was "doing keyboarding for 75 to 95 percent of her time," Dr. Watson testified that plaintiff would be "more prone to [tendinitis] than someone that did not do keyboarding for that amount of time[.]"

In response to questioning by defendants' counsel, Dr. Watson testified that she was not aware of any recognizable link between tendinitis and plaintiff's job as Assistant Director of Pretrial Services. She then testified as follows:

> Q. Do you have an opinion satisfactory to yourself and to a reasonable degree of medical certainty whether tendinitis is characteristic of and peculiar to the position of assistant director of pre-trial services?
>
> . . . .
>
> A. I don't have anything. I guess no.

Dr. Watson agreed that tendinitis is "an ordinary disease of life."

On 4 May 2004, plaintiff was examined by Dr. James E. Lowe, Jr., who is board certified in plastic surgery. He explained that his "boards state that [he is] qualified and certified to perform hand surgery" and that he performs approximately 300 hand surgeries a year, including carpal tunnel surgeries. Dr. Lowe found that plaintiff had clinical evidence of carpal tunnel syndrome and ordered another nerve conduction study. The nerve conduction study, read by a board certified neurologist, showed "a polyneuropathy of the upper extremities involving both the median and the ulnar nerves," which, according to Dr. Lowe, confirmed his carpal tunnel diagnosis. At first, Dr. Lowe continued plaintiff on medication and instructed her to wear splints at night. When, on 26 July 2004, Dr. Lowe last treated plaintiff for continued numbness in both hands, he recommended carpal tunnel surgery on both of plaintiff's hands.

LATHON v. CUMBERLAND CTY.

[184 N.C. App. 62 (2007)]

With respect to the cause of plaintiff's carpal tunnel syndrome, Dr. Lowe testified:

> I do have an opinion to a reasonable degree of medical certainty that is supported by essentially all of the literature on carpal tunnel surgery, that it is causal—casually [sic] related to repetitionous [sic] work, and I feel that in her case that her carpal tunnel surgery is related to her repetitionous [sic] work, which causes synovitis.

According to Dr. Lowe, synovitis is the most common cause of carpal tunnel syndrome. He concluded that repetitious activity was "the most significant contributing factor" to plaintiff's carpal tunnel syndrome. Dr. Lowe explained that his diagnosis was consistent with Dr. Watson's diagnosis because tendinitis is the same as synovitis. Dr. Lowe further testified that the general public at large, who does not do repetitive keyboarding to the degree of plaintiff, would not be at equal risk of developing carpal tunnel syndrome as someone who does perform the repetitive activity.

Defendants denied plaintiff's claim and, following a hearing, Deputy Commissioner Theresa Stephenson filed an opinion and award on 21 December 2004 denying plaintiff's claim. The deputy commissioner did not find Dr. Lowe's testimony credible, and, therefore, concluded plaintiff had failed to establish that she suffered from an occupational disease. Plaintiff appealed to the Full Commission.

On 7 April 2006, in an opinion and award authored by Commissioner Laura Kranifeld Mavretic and joined by Commissioner Thomas J. Bolch, the Full Commission reversed the decision of the deputy commissioner. The Commission found "that plaintiff's repetitious work caused synovitis, which led her to develop bilateral carpal tunnel syndrome"; that "plaintiff contracted an occupational disease to both of her hands as a result of her job"; that "[p]laintiff's condition is the result of a disease that is characteristic of and peculiar to her particular trade, occupation or employment"; and that "[p]laintiff's disease is not an ordinary disease of life to which the public is equally exposed outside the employment." Based on these findings, the Commission concluded that plaintiff had contracted a compensable occupational disease. Commissioner Dianne C. Sellers dissented on the grounds that the majority erred by finding Dr. Lowe's testimony credible. Defendants timely appealed to this Court.

LATHON v. CUMBERLAND CTY.

[184 N.C. App. 62 (2007)]

I

[1] We turn first to defendants' argument that the Commission's opinion and award is void because it was filed after the terms of Commissioners Bolch and Mavretic had expired. Defendants rely upon *Estes v. N.C. State Univ.*, 117 N.C. App. 126, 128, 449 S.E.2d 762, 764 (1994), in which this Court vacated an opinion and award of the Industrial Commission when it was filed after the term of one of the two commissioners joining in the majority opinion had expired.

Here, the terms for Commissioners Bolch and Mavretic—the two members of the majority—expired on 30 June 2004 and 30 April 2005 respectively. *See* N.C. Gen. Stat. § 97-77(a) (2005) ("[T]he Governor shall appoint [commissioners] for a term of six years, and thereafter the term of office of each commissioner shall be six years."). Defendants assert that we are, therefore, required under *Estes* to vacate and remand the Commission's decision filed on 7 April 2006.

Plaintiff responds that *Estes* is at odds with a state constitutional provision that "[i]n the absence of any contrary provision, all officers in this State, whether appointed or elected, *shall hold their positions until other appointments are made* or, if the offices are elective, until their successors are chosen and qualified." N.C. Const. art. VI, § 10 (emphasis added). Our Supreme Court considered a similarly worded provision applying to judges, N.C. Const. art. IV, § 16, and held: "Where, as here, the incumbents' terms end without successors having been elected and qualified, and new terms of office have not begun, the Constitution's 'hold over' provision operates and allows the incumbents to continue serving in the interim. The constitutional provision . . . allows the judges to remain in office." *State ex rel. Martin v. Preston*, 325 N.C. 438, 455, 385 S.E.2d 473, 482 (1989) (internal citation omitted). This principle has also been codified by our General Assembly in N.C. Gen. Stat. § 128-7 (2005) ("All officers shall continue in their respective offices until their successors are elected or appointed, and duly qualified."). Under the state constitution, N.C. Gen. Stat. § 128-7, and *Preston*, it would appear that Commissioners Mavretic and Bolch were still properly serving.

Neither *Estes* nor defendants address N.C. Const. art. VI, § 10. We need not, however, resolve the apparent conflict between *Estes* and N.C. Const. art. VI, § 10—and the analysis of our Supreme Court in *Preston*—since defendants have failed to preserve this issue for appellate review.

Rule 10(b)(1) of the Rules of Appellate Procedure provides: "In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." As our Supreme Court has observed with respect to N.C.R. App. P. 10(b)(1), its purpose " 'is to require a party to call the [trial] court's attention to a matter upon which he or she wants a ruling before he or she can assign error to the matter on appeal.' " *Reep v. Beck*, 360 N.C. 34, 37, 619 S.E.2d 497, 499 (2005) (quoting *State v. Canady*, 330 N.C. 398, 401, 410 S.E.2d 875, 878 (1991)).

In the present case, nothing in the record indicates that defendants raised the issue of the validity of Commissioners Bolch's and Mavretic's ongoing tenures in office before the Full Commission. The record includes a calendar for the 8 June 2005 docket before the Full Commission, identifying Commissioners Sellers, Mavretic, and Bolch as the panel before which this case would be heard. The record, however, contains no indication that defendants at any time prior to appeal objected to the presence of Commissioners Bolch and Mavretic even though, under *Estes*, it would be impossible to have an opinion joined by two Commissioners with unexpired terms.

This failure is particularly significant given that the Commission—had it agreed with defendants' argument under *Estes*—could have remedied the situation by convening another panel comprised of individuals whose terms had not yet similarly expired. *See* N.C. Gen. Stat. § 97-85 (2005) ("Provided further, the chairman of the Industrial Commission shall have the authority to designate a deputy commissioner to take the place of a commissioner on the review of any case, in which event the deputy commissioner so designated shall have the same authority and duty as does the commissioner whose place he occupies on such review."). We decline to construe *Estes* so as to permit defendants to circumvent this well-established rule of appellate practice and obtain a ruling on the issue from this Court without first calling it to the attention of the Commission.

*Estes* presented a materially different set of circumstances. In *Estes*, Commissioner Davis' term expired eight months *after* oral argument before the panel, but before entry of the opinion and award. 117 N.C. App. at 128, 449 S.E.2d at 764. Thus, the parties did not have a meaningful opportunity to object. It is also apparent that the question of the propriety of Commissioner Davis' joining in the opinion was considered by the panel since Commissioner Davis attached an

**LATHON v. CUMBERLAND CTY.**

[184 N.C. App. 62 (2007)]

affidavit to the opinion and award stating that he had joined the opinion prior to his term's expiration. *Id.* The issue had, therefore, been preserved for appellate review.

This case does not involve a question of jurisdiction that can be raised at any time. Even under *Estes*, Commissioners Mavretic and Bolch could be considered *de facto* officers. As this Court has explained: "*De facto* status arises where a person assumes office 'under *color* of authority' or where one 'exercises the duties of the office so long or under such circumstances as to raise a presumption of his right; in which cases his necessary official acts are valid as to the public and third persons; but he may be ousted by a direct proceeding.' " *Kings Mountain Bd. of Educ. v. N.C. State Bd. of Educ.*, 159 N.C. App. 568, 575, 583 S.E.2d 629, 635 (quoting *Norfleet v. Staton*, 73 N.C. 546, 550 (1875)), *disc. review denied*, 588 S.E.2d 476 (2003). *See also* N.C. Gen. Stat. § 128-6 (2005) ("Any person who shall, by the proper authority, be admitted and sworn into any office, shall be held, deemed, and taken, by force of such admission, to be rightfully in such office until, by judicial sentence, upon a proper proceeding, he shall be ousted therefrom, or his admission thereto be, in due course of law, declared void.").

Here, there is no dispute that Commissioners Mavretic and Bolch were properly appointed as Commissioners of the Industrial Commission. As a result, even if, under *Estes*, they were unable to continue serving after their terms expired, the fact that they continued to publicly discharge their duties as Commissioners rendered them *de facto* officers. *See State ex rel. Duncan v. Beach*, 294 N.C. 713, 720, 242 S.E.2d 796, 800 (1978) (holding that "[a] judge *de facto* is defined as one who occupies a judicial office under some color of right, and for the time being performs its duties with public acquiescence, though having no right in fact" (internal quotation marks omitted)). Further, "[t]he acts of a *de facto* officer are valid in law in respect to the public whom he represents and to third persons with whom he deals officially." *State v. Porter*, 272 N.C. 463, 465-66, 158 S.E.2d 626, 628 (1968).[1]

Thus, as at least *de facto* officers, the public acts of Commissioners Mavretic and Bolch are deemed valid and their presence on the panel cannot give rise to a jurisdictional challenge that eliminates the

---

1. We note that this Court has also held that "[t]he validity of the title *or an act* of a *de facto* officer may be challenged only through an action of *quo warranto*." *Kings Mountain*, 159 N.C. App. at 575, 583 S.E.2d at 635 (emphasis added).

need to comply with N.C.R. App. P. 10.[2] Because defendants do not contend that they raised this issue below, we may not consider this assignment of error. A contrary conclusion would allow a party to wait and see whether a panel would rule favorably, secure in the knowledge that any unfavorable ruling could be voided on appeal. This Court has previously rejected such an approach in the analogous area of judicial recusal. *See In re Key,* 182 N.C. App. 714, 719, 643 S.E.2d 452, 456 (2007) (holding that when party to civil proceeding failed to move at trial level to recuse judge for bias and prejudice, Rule 10(b)(1) precluded appellate review); *State v. Love,* 177 N.C. App. 614, 628, 630 S.E.2d 234, 243 ("There was no request, objection or motion made by defendant at trial [to recuse the trial judge] and therefore the question was not properly preserved for appeal."), *disc. review denied,* 360 N.C. 580, 636 S.E.2d 192-93 (2006). We see no basis for applying a different rule when a party fails to object to a "holding over" commissioner.

II

We turn now to defendants' arguments challenging the Commission's findings of fact and conclusions of law. "[A]ppellate review of an award from the Commission is generally limited to two issues: (1) whether the findings of fact are supported by competent evidence, and (2) whether the conclusions of law are justified by the findings of fact." *Johnson v. Southern Tire Sales & Serv.,* 358 N.C. 701, 705, 599 S.E.2d 508, 512 (2004). Findings of fact by the Commission are conclusive on appeal " 'when supported by competent evidence, even when there is evidence to support a finding to the contrary.' " *Gutierrez v. GDX Auto.,* 169 N.C. App. 173, 176, 609 S.E.2d 445, 448 (quoting *Plummer v. Henderson Storage Co.,* 118 N.C. App. 727, 730, 456 S.E.2d 886, 888, *disc. review denied,* 340 N.C. 569, 460 S.E.2d 321 (1995)), *disc. review denied,* 359 N.C. 851, 619 S.E.2d 408 (2005).

[2] Defendants first assert that the Commission erred by finding that "[n]inety-five percent of plaintiff's job is keyboarding or handwriting affidavits." Defendants concede that this finding is supported by plaintiff's own testimony. Defendants' assertion "that plaintiff's claim

2. Defendants also cite *Coppley v. PPG Indus., Inc.,* 142 N.C. App. 196, 197-99, 541 S.E.2d 743, 744-45 (2001) (voiding majority opinion and award entered on remand because concurring commissioner had retired prior to filing). In *Coppley,* however, one of the commissioners in the majority had actually left the Commission prior to the filing of the opinion and, therefore, the panel was composed of only two commissioners. Further, the appellant in *Coppley* would have had no opportunity to raise the issue prior to appeal.

LATHON v. CUMBERLAND CTY.

[184 N.C. App. 62 (2007)]

in this regard is not credible given her title, admitted duties, and total lack of corroborating evidence" was an argument for the Commission. Since this finding is supported by plaintiff's testimony, it cannot be disturbed on appeal regardless whether there is also evidence to the contrary. *See Alexander v. Wal-Mart Stores, Inc.*, 166 N.C. App. 563, 573, 603 S.E.2d 552, 558 (2004) (Hudson, J., dissenting) (noting that if "there is any evidence at all, taken in the light most favorable to the plaintiff, the finding of fact stands, even if there is substantial evidence to the contrary"), *adopted per curiam*, 359 N.C. 403, 610 S.E.2d 374 (2005).

**[3]** Defendants next contend that the Commission "erred in finding that Dr. Lowe's testimony was credible" rather than agreeing with the deputy commissioner that the testimony should not be accepted as credible. It is well-established that " '[t]he Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony.' " *Adams v. AVX Corp.*, 349 N.C. 676, 680, 509 S.E.2d 411, 413 (1998) (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 433-34, 144 S.E.2d 272, 274 (1965)). Consequently, this Court may not review the Commission's credibility determination. *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116-17, 530 S.E.2d 549, 553 (2000).

**[4]** Finally, defendants argue that the Commission erred in concluding that plaintiff contracted an occupational disease from her work duties. Because carpal tunnel syndrome is not specifically listed as an occupational disease in N.C. Gen. Stat. § 97-53 (2005), it falls instead within the catchall provision of N.C. Gen. Stat. § 97-53(13). Under § 97-53(13), an occupational disease includes "[a]ny disease . . . which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment."

As the Supreme Court has explained, in order to be considered an occupational disease under N.C. Gen. Stat. § 97-53(13), a condition must be:

(1) characteristic of persons engaged in the particular trade or occupation in which the claimant is engaged; (2) not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation; and (3) there must be "a causal connection between the disease and the [claimant's] employment."

LATHON v. CUMBERLAND CTY.

[184 N.C. App. 62 (2007)]

*Rutledge v. Tultex Corp.*, 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983) (quoting *Hansel v. Sherman Textiles*, 304 N.C. 44, 52, 283 S.E.2d 101, 105-06 (1981)). The first two elements "are satisfied if, as a matter of fact, the employment exposed the worker to a greater risk of contracting the disease than the public generally." *Id.* at 93-94, 301 S.E.2d at 365.

Defendants assert that "plaintiff failed to elicit credible expert medical testimony in support of her position, and therefore [has] failed to prove the existence of an occupational disease . . . ." Defendants suggest that the testimony of Dr. Watson is more credible and supports their position that plaintiff did not have a compensable occupational disease. Defendants do not dispute that Dr. Lowe's testimony—found credible by the Commission—supports the Commission's findings (1) "that plaintiff contracted an occupational disease to both of her hands as a result of her job with defendant," (2) that "[p]laintiff's condition is the result of a disease that is characteristic of and peculiar to her particular trade, occupation or employment," and (3) "[p]laintiff's disease is not an ordinary disease of life to which the public is equally exposed outside the employment."

Because the Commission's findings are supported by Dr. Lowe's testimony, they are binding even though defendants have pointed to contrary testimony. Further, those findings of fact support the Commission's conclusion that plaintiff has contracted a compensable occupational disease. *See, e.g.*, *Terasaka v. AT&T*, 174 N.C. App. 735, 743-44, 622 S.E.2d 145, 151 (2005) (plaintiff carried burden of showing carpal tunnel syndrome was an occupational disease when doctors testified that extensive typing like plaintiff testified she routinely performed placed plaintiff at increased risk), *aff'd per curiam and disc. review improvidently allowed*, 360 N.C. 584, 634 S.E.2d 888 (2006). We, therefore, affirm the opinion and award of the Commission.

Affirmed.

Judge ELMORE concurs.

Judge TYSON dissents in a separate opinion.

TYSON, Judge dissenting.

The majority's opinion ignores binding precedent from this Court that the Commission's opinion and award is void when entered after

the expiration of two of the Commissioner's terms. *Coppley v. PPG Industries, Inc.*, 142 N.C. App. 196, 541 S.E.2d 743 (2001); *Estes v. N.C. State Univ.*, 117 N.C. App. 126, 449 S.E.2d 762 (1994). Neither of these precedents have been overturned by our Supreme Court. "Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." *State v. Jones*, 358 N.C. 473, 487, 598 S.E.2d 125, 133-34 (2004); *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). I respectfully dissent.

This case was heard before a panel of the Full Commission consisting of Commissioners Bolch, Mavretic, and Sellers on 8 June 2005. The opinion and award was signed by the Commissioners on 3 August 2005 and filed on 7 April 2006. Commissioner Mavretic authored the opinion and award and Commissioner Bolch concurred. Commissioner Sellers dissented. Defendant asserts the terms of Commissioners Bolch and Mavretic expired on 30 June 2004 and 30 April 2005 respectively.

## I. Appellate Rule 10(a)

This issue is properly before this Court. Rule 10(a) of the North Carolina Rules of Appellate Procedure provides:

[U]pon any appeal duly taken from a final judgment any party to the appeal may present for review, by properly making them the basis of assignments of error, the questions whether the judgment is supported by the verdict or by the findings of fact and conclusions of law, *whether the court had jurisdiction of the subject matter*, and whether a criminal charge is sufficient in law.

N.C.R. App. P. 10(a) (2007) (emphasis supplied). "Jurisdiction is '[t]he legal power and authority of a court to make a decision that binds the parties to any matter properly brought before it.' " *In re T.R.P.*, 360 N.C. 588, 590, 636 S.E.2d 787, 789-90 (2006) (quoting Black's Law Dictionary 856 (7th ed. 1999)). "[A] court must also have subject matter jurisdiction, or jurisdiction over the nature of the case and the type of relief sought, in order to decide a case." *Id.* at 590, 636 S.E.2d at 790 (quotation omitted). Subject matter jurisdiction is "the power to pass on the merits of the case." *Boyles v. Boyles*, 308 N.C. 488, 491, 302 S.E.2d 790, 793 (1983).

Defendant argues Commissioners Bolch and Mavretic had no jurisdiction, subject matter or otherwise, to rule upon this case after

their terms had expired prior to the case being heard and that the Commission's opinion and award is void. Defendant's assignment of error numbered 7 states, "The Commission erred as a matter of law in filing its Opinion and Award without a sufficient number of Commissioners concurring." Defendant has properly raised and argued this issue through an assignment of error. This issue is properly before this Court. N.C.R. App. P. 10(a).

## II. *Estes* and *Coppley*

The proper holding in this case is controlled by this Court's prior precedents. In *Estes*, the Full Commission panel consisted of three commissioners at the time of the original hearing. 117 N.C. App. at 128, 449 S.E.2d at 764. Chairman Booker authored the opinion and award and Commissioner Davis concurred. *Id.* Commissioner Ward dissented. *Id.* However, when the opinion and award was signed and filed, Commissioner Davis's term had expired. *Id.* This Court unanimously held the Full Commission's decision was void as a matter of law. *Id.*

This Court also considered this issue in *Coppley*, 142 N.C. App. 196, 541 S.E.2d 743. Commissioner Bolch authored the opinion and award and Commissioner Bunn concurred. *Id.* Commissioner Riggsbee dissented. *Id.* at 197, 541 S.E.2d at 743. Chairman Bunn signed the opinion and award on 22 June 1999 and left the Commission on 21 September 1999. *Id.* The opinion and award was filed on 19 October 1999. *Id.* This Court stated, " 'Where a commissioner's vote was taken before the expiration of his term of office, but the decision was not issued until after the term expired, the decision of the Commission is void as a matter of law.' " *Id.* at 198, 541 S.E.2d at 744 (quoting Leonard T. Jernigan, Jr., *North Carolina Workers' Compensation Law and Practice* § 25-9 (3d ed. 1999)). The opinion and award was held to be void because no majority of the Commission existed when it was filed. *Id.*

The facts of this case are more egregious than either of the facts in *Estes* or *Coppley*. Defendant argues that unlike the facts in *Estes and Coppley*, Commissioners Bolch and Mavretic comprised the total majority and both their terms had expired before the panel convened, the case was heard, and the opinion and award was entered. On 8 September 2006, this Court allowed defendant's Motion for Addition to Record on Appeal filed on 24 August 2006 as exhibits to the record on appeal. Attached to the motion as Exhibit A were copies of two letters, both signed by former Governor James B. Hunt, Jr. One letter,

dated 10 June 1999, is addressed to Mr. Thomas J. Bolch. The first paragraph of the letter states in full, "It gives me great pleasure to reappoint you as a member of the North Carolina Industrial Commission. Pursuant to General Statute 97-77, your appointment is effective immediately. Your term *will expire on June 30, 2004.*" (Emphasis supplied).

The second letter, dated 21 July 2000, is also signed by former Governor Hunt and is addressed to Ms. Laura K. Mavretic. The first paragraph of this letter states in full, "It gives me great pleasure to appoint you to serve as a member of the North Carolina Industrial Commission. Pursuant to General Statute 97-77, your appointment is effective August 1, 2000 and *will expire on April 30, 2005.*" (Emphasis supplied).

Nothing in the record shows either Commissioners Bolch or Mavretic were reappointed to the Commission after their terms of office expired on "June 30, 2004," and "April 30, 2005," respectively. According to the Commission's website, Commissioner Bolch was replaced by Mr. Danny Lee McDonald, who was sworn into office on 9 February 2007. Commissioner Mavretic was administered the oath of office on 8 February 2007. *See* News Release dated 2 February 2007, http://www.comp.state.nc.us/ncic/pages/020207nr.htm.

Defendant argues Commissioners Bolch and Mavretic purported to convene the Commission to hear this case, and signed and entered the opinion and award after their terms had expired and without a current commission issued by the Governor to renew their terms. N.C. Gen. Stat. § 97-77 (2005) mandates "the Governor *shall* appoint a successor for a term of six years, and thereafter the term of office of each commissioner *shall* be six years." (Emphasis supplied).

This Court is bound by both *Estes* and *Coppley*. *Jones,* 358 N.C. at 487, 598 S.E.2d at 133-34; *In re Civil Penalty,* 324 N.C. at 384, 379 S.E.2d at 37. "As a commission it acts by a majority of its *qualified members* at the time decision is made." *Gant v. Crouch,* 243 N.C. 604, 607, 91 S.E.2d 705, 707 (1956) (emphasis supplied).

### III. Conclusion

Defendant's appeal challenges the jurisdictional members of the Commission to hear this appeal. N.C.R. App. P. 10(a). Following *Gant, Estes,* and *Coppley,* no majority of the Commission possessed "the power to pass on the merits of the case" or concur in the opinion and

IN RE Dj.L., D.L., & S.L.

[184 N.C. App. 76 (2007)]

award entered. *Boyles*, 305 N.C. at 491, 302 S.E.2d at 793. The opinion and award is void and must be vacated. *Gant*, 243 N.C. at 607, 91 S.E.2d at 707; *Coppley*, 142 N.C. App. at 198, 541 S.E.2d at 744; *Estes*, 117 N.C. App. at 128, 449 S.E.2d at 764. I respectfully dissent.