In 1864, Daniel L. Russell, Jr.,* was commissioned a captain in Company G, Thirty-sixth Regiment, North Carolina Troops. In February, 1864, he was sentenced by a general court-martial "to be dismissed from the service," which sentence was approved by General Whiting, "so as to deprive him of his commission," and the general granted him the privilege of selecting another company, if he desired to do so, and gave him leave of absence for thirty days. In March, 1864, Russell was appointed county commissioner by the justices of Brunswick County, gave bond and entered upon the duties of the office on 11 March; the Governor certified that he was a county officer, necessary for the proper administration of the government of the State. Notwithstanding his appointment, and the Governor's certificate, General Whiting claimed him as a private, liable to military service; whereupon he sued out a writ of habeas corpus, asserting his right to exemption.
(389) The act of Congress, 17 February, 1864, is a general conscription law. By the first section, all white men, residents of the Confederate States, between the ages of 17 and 50, are conscripted for the war. Section 2 has reference to men between the ages of 18 and 45 "now in service," and the sole purpose is obviously to make a distinction between them and other conscripts, by retaining them in the same regiments,battalions, and companies to which they belonged at the passage of the act, instead of having them enrolled and sent to camp of instruction. There is nothing in the act to show an intention to put them on a different footing from other conscripts in any other respect, or to exclude them from the operations of the provisions in relation to exemptions. It follows that the first ground taken in the return, to wit, that Russell, being already in service, cannot be a conscript, and, consequently, is not embraced by the provisions in relation to exemptions, is untenable. So the question is, Does clause 2 of section 10 exempt one who is in service at the time he is elected or appointed a State officer — *Page 249 
a member of the Legislature, for instance, or a State officer, whom the Government may certify is necessary for the proper administration of the State Government, i. e., a judge of the Supreme or Superior Court (for as the act is worded, these officers, although constituting a coordinate branch of the State Government, are required to entitle themselves to exemption by the certificate of the Governor), or a justice of the peace, constable, or county commissioner?
The question is stated broadly, in order not to raise the issue made by the petitioner and return, as to whether Russell, at the time of his appointment, was in actual military service, or only constructively so; for, assuming that the effect of the sentence of the court-martial was not to dismiss him from the service, and subject him to conscription,de novo, but simply to deprive him of his commission and make him a private in the company of which he had been captain, I (390) am of opinion that his appointment to the office had the effect of exempting him from military service, both by force of the Constitution and of the act of Congress and the certificate of the Governor in pursuance thereto.
The authority of the Government to conscript is derived from the power conferred on Congress to "raise and support armies." This power, from the very nature of things, is subject to the restriction that it shall not extend to the Governor, members of the Legislature, judges or other officers necessary for the proper administration of the State Government; for as the Confederate Government is a creature of the States, it is absurd to suppose that the intention was to make a grant of power which would enable the creature to destroy its creator, and cause the existence of the States to be dependent on the pleasure of Congress.
Apart from this, the act of Congress in general terms exempts "members of Congress, and of the several State Legislatures, and such other Confederate officers as the President or the Governors of the respective States may certify to be necessary for the proper administration of the Confederate and State governments, as the case may be."
The province of deciding what officers are necessary for the proper administration of the State governments belongs to the Legislature. That body has deemed it necessary to provide for the appointment and exemption of county commissioners (act of 1864), and in compliance therewith the Governor has certified, in pursuance of the act of Congress, that this officer was necessary.
Will it be said the States must procure their Governors, members of the Legislature, judges, and other necessary officers from among the citizens who are over the age of conscription, or at all events those who are not already in service, and cannot take a man out of the army to *Page 250 
(391) fill any of these offices? On what ground is this assumption based? There is no such provision in the Constitution, or in the act of Congress, or in the act of the Legislature, and there is nothing from which it can be implied; on the contrary, the implication is directly against it, and the courts cannot presume that it was the intention thus tonarrow the field of selection in regard to State officers. Nothing short of plain and direct words could be allowed to have that effect. The practice in such cases, and the legislation of Congress whereby it is provided that a military officer may resign when elected or appointed to a civil office in a State, confirm this conclusion, and leave no room to question the position that a private, although in the ranks, whenever he is elected or appointed and is qualified and inducted into an office under the State, and the Governor certifies, in pursuance to the act of Congress, becomes by the force and effect thereof exempted.
The second ground taken in the return is also untenable. The court or judge, in a proceeding of this nature, is not at liberty to go behind the record of the qualification and appointment of a party. The validity of his appointment, on the ground that Russell is under the age of 21 years, cannot be impeached in this collateral way. It can only be done by a quowarranto, or other proceeding, in which the matter can be put directly at issue and the office be adjudged forfeited or vacated.
The writ of habeas corpus is used in cases like the present as a civil remedy for the purpose of having the liability of the petitioner to conscription adjudicated, for the reasons given by me in Cain's case (post, 525). I am of opinion that the act of Congress suspending the writ ofhabeas corpus does not apply to this case. Since the decision in Cain'scase I was gratified to find that my conclusion is supported by the opinion of Chief Justice Marshall in Bollman v. Swartwout, 4 Cranch, 75. He says that the clause of the Constitution which authorizes the suspension of the writ applies only to the writ of habeas corpus ad sub-
(392) jiciendum, "the great writ of right," sued out by a person who stands committed for some criminal or supposed criminal offense, and does not embrace the inferior kinds of the writ, such as habeascorpus ad testificandum and the like. I will also refer to the very full and able argument filed by Mr. Moore in this case.
I am of opinion that the return of W. H. C. Whiting is insufficient, and does not show that the petitioner is liable to military service. My conclusion is that he is entitled to exemption, and should be discharged, the facts set out in the return to the contrary notwithstanding.
Richmond Hill, 25 July, 1864.
NOTE. — Overruled by Smith v. Prior, post, 417; Vide In re Sowers,ante, 384; Johnson v. Mallett, post, 410. See note to In re Sowers, ante, 388.
* Governor of North Carolina, 1897-1901. *Page 251