STATE v. SHUFORD.

(Filed May 1, 1901.)

PUBLIC OFFICERS—*Appointment to an Office Not Yet in Existence, Invalid—Courts—Larceny.*

> Appointment of a Judge of Superior Court prior to date when the act creating the Judicial District takes effect. is invalid. and a motion in arrest of judgment by a person convicted of larceny, on the ground that the court was illegally constituted, should have been allowed.

INDICTMENT against Walter Shuford, heard by Judge *George A. Jones* and a jury, at April Term, 1901, of BUNCOMBE County Superior Court. After verdict of guilty, the defendant moved in arrest of judgment, and excepted to refusal of said motion. From judgment, the defendant appealed.

*Robert D. Gilmer,* Attorney-General, for the State.
No counsel for the defendant.

CLARK, J.   The General Assembly, by an "Act to provide for the division of the State into Judicial Districts and for holding the Courts therein," ratified 11th March, 1901, increased the number of Judicial Districts to 16, and prescribed the counties comprised in each, the time for holding Courts therein, and for the rotation of the judges, and specifying in which districts the additional judges and solicitors shall be appointed by the Governor to fill the original vacancies created by the Act, till the next general election. Section 10 thereof provides that the Act shall take effect and be in force from 30th June, 1901, "except that as to the Fifteenth District this Act shall take effect from and after the twenty-fitth day of March, 1901, and after that date Courts shall be

held in said Fifteenth District at the time herein provided, and said Courts shall be presided over by the judge of the Sixteenth District, who shall be appointed by the Governor on or prior to the 25th April, 1901," A supplementary Act, ratified 4th April, 1901, enacted that the Governor was authorized to appoint the additional judges and solicitors provided for in above Act at any time after 11th March, 1901, and ratified all appointments made since that date.

On 15th April, 1901, the Governor issued a commission to George A. Jones, Esq., as "Judge of the Superior Court for the Sixteenth Judicial District," who appeared and opened Court for Buncombe County on Thursday, April 25th— Court being adjourned from day to day till then—during the first week of a term prescribed by aforesaid act to be held in said county as a part of the now Fifteenth District. Proceedings were had in the ordinary course, and a grand jury returned into Court an indictment for larceny against the defendant "a true bill." The defendant moved the Court to quash the bill of indictment for that the Court was not legally constituted and had no jurisdiction; also on the same grounds he prayed the Court that he might not be compelled to answer said indictment. Both motions were overruled, and defendant excepted. After verdict of "guilty," the defendant moved in arrest of judgment upon the same grounds, and excepted to the refusal of said motion. Sentence was passed, and defendant appealed.

The Constitution (Art. IV, secs. 10 and 11) provides that there shall be a judge for each Superior Court district, that each judge shall reside in his district, and that the judges shall hold the Courts of the several districts in rotation. From these provisions it is clear that there can be no judge of the Superior Court in North Carolina unless there is a district to which he belongs. Section 10 of said Article IV, empowers the General Assembly to "reduce or increase the

number of districts." But the act increasing the number of districts, provides that (except as to the Fifteenth District) the act should not take effect till 30th June, 1901. There can, therefore, be no Sixteenth District till 30th June, and consequently till that date there can be no such office in existence as "Judge of the Sixteenth Judicial District." The implication from the words in the act that the Courts of the Fifteenth District "shall be held by the judge of the Sixteenth District," and the direct authority conferred on the Governor in the supplemental act to appoint and commission the new officers provided by the first act, can have no other authority, at the most, than to empower him to nominate and issue commissions to the appointees. Certainly such commissions could not become *effective* so as to clothe the appointees with the power to exercise the duties of the office or enjoy its emoluments, until the new districts shall come into existence.

It is very questionable whether the provision, putting the Fifteenth District into existence 25th March, 1901, is valid, seeing that under that temporary thirteen district arrangement (to last till 30th June) the judge of the Twelfth District, who, as such, is holding under an unrepealed statute the Courts of the Seventh District, is thus made a resident of the Fifteenth District; and the judge of the Fifth District, under the unrepealed statute, is holding the Courts of the Twelfth District, in which assignment of duty is a two-weeks term for Buncombe, beginning the 29th April. It presents this and other complications, but it is not now necessary to discuss and pass upon the validity of that provision. Any possible difficulty could be avoided, if thought proper, by authority issued to Judge Shaw to hold a special term in Buncombe. What is plain, is that as there will be no Sixteenth Judicial District till 30th June, 1901, the General Assembly could not authorize the creation of the office of Judge of the Sixteenth District to begin and take effect before the district existed.

In *Cook v. Meares,* 116 N. C., 582, it was held that the General Assembly could not elect one to fill an office till an act creating the office was ratified.   It is true, this case differs in that, here, the act providing for the office has been ratified, but it prescribes that it shall begin existence *in futuro,* for when it says the Sixteenth District shall not be in existence till 30th June, the Constitution steps in and says, till there is a district there can be no judge for the district.   Were it otherwise, there would be no constitutional inhibition upon the number of unassigned or unattached judges—"judges in waiting," so to speak.   If there could be one, there could be a dozen.

The attempt to create a judge with the powers of a Superior Court Judge, without a Superior Court District assigned him, was held invalid as to Judge Ewart, in *Rhyne v. Lipscombe,* 122 N. C., 650, even though in that case he was given a different title.

It was earnestly insisted that the presiding officer here was at least a *de facto* judge, because he had a commission issued by the Executive under authority of an act of the Legislature.   But the indispensable basis of being a *de facto* officer is that there is such an office.   Meacham on Public Offices, sec. 324, and numerous cases there cited.   Then, if one with color of right—not a mere usurper—is exercising the functions of the office, his title thereto and the validity of his judgments can not be called in question, except by a direct proceeding in *quo warranto.*   "There can be no officer, either *de jure* or *de facto,* if there be no office to fill." *Carleton v. People,* 10 Mich., 250.   "While there may be *de facto* officers, there can be no *de facto* office in a constitutional government," says the United States Supreme Court (Field, J.) in *Norton v. Shelby County,* 118 U. S., at pages 441–449, "for the existence of a *de facto* officer, there must be an office *de jure.*"   In *Ex Parte Snyder,* 64 Mo., 58, it

was held that a *de facto* officer presupposes a *de jure* office, and where the office of judge did not legally exist, the acts of one acting under a commission as judge were null and void. "There can be no *de facto* officer when there is no office *de jure,*" was held in *In Re Hinkle,* 31 Kan., 712, and accordingly one held in custody by the judgment of one thus acting as a judicial officer, was discharged on *habeas corpus.*

Here, as already shown, there was no such officer as "Judge of the Sixteenth Judicial District," and will be none till a future date specified in the act. The provision that the "Judge of the Sixtenth District" should hold the Courts of the Fifteenth District after March 25th, if it created the Fifteenth District did not purport to create the "judge of the Sixteenth District," nor did the act authorize the Governor to appoint and commission the new judges and solicitors after March 11th purport to create those offices.

It is unnecessary that we should pass upon or deny the validity of the act authorizing the Governor to appoint and commission his selections for these offices before they came into existence—to nominate and commission one to a vacancy (whether original or otherwise) before the vacancy exists. As an abstract proposition, not involved here, a curious question might arise whether such commission would not be revokable at any time before the day the office begins, should the Executiive change his mind and appoint another, or if the General Assembly should change the composition of the districts before the date when the office is to become existent.

But this is merely speculative. What we feel compelled to hold is that there is not, and can not be, any office of "Judge of the Sixteenth Judicial District," till 30th June, 1901, when that district is to begin its existence, and that one attempting to perform the duties of such alleged office is neither a *de facto* nor a *de jure* officer, and his acts are null and void. In *State v. Lewis,* 107 N. C., 967, the judge

was one of the Superior Court Judges of the State. The only question was as to the legality of his assignment to hold that term. It was held that he was a *de facto* officer, and his acts could not be questioned by a motion in arrest of judgment.

There is, it is true, no express power given the Courts by the letter of the Constitution to declare an Act of the General Assembly unconstitutional, but it has been exercised in this State, without ever being denied (in a proper case), since it was first held in *Bayard v. Singleton,* 1 N. C., 42. The principle upon which the doctrine rests, is that when there is a provision in the Constitution and a conflicting provision in a statute, the Courts must recognize the former as paramount authority. The limitation upon the power is stated in many cases and repeated in *Sutton v. Phillips,* 116 N. C., at page 504—"the Courts will not declare that the co-ordinate branch of the government has exceeded the powers vested in it, unless it is plainly and clearly the case." The statute here in question is plainly and clearly in conflict with the constitutional provision, in attempting to create a judge of the Superior Court without a district. The office which he offered to exercise was not in existence, and his acts were not those of a *de facto* officer, and hence must be treated as null and void. In view of the statute, he doubtless felt that he ought not to refuse to attempt to exercise the duties of the office, and that the proper course was to submit the unconstitutionality of the act to this Court.

Judgment arrested.