IN THE MATTER OF GRACE HAYES WINGLER.

(Filed 22 March, 1950.)

**1. Public Officers § 5b—**

A *de jure* judge is one who possesses the legal qualifications for the judicial office in question, has been lawfully chosen, and has qualified himself to perform the duties of such office according to the mode prescribed by law.

**2. Public Officers § 5a—**

A *de facto* judge is one who assumes to be the judge of a court established by law, has possession of the judicial office in question and discharges its duties, and has a fair color of right or title to the judicial office or has acted as its occupant for so long a time and under such circumstances of reputation and acquiescence by the public generally as to give rise to the supposition that he is the judge he assumes to be, but whose incumbency is illegal in some respect.

**3. Public Officers § 5c—**

A usurper is one who undertakes to act officially without any actual or apparent authority.

**4. Public Officers § 9—**

Where the validity of an act of a person acting in a judicial office is collaterally attacked, the court may inquire into his right to the judicial office only so far as to determine whether he is a usurper on the one hand or a *de jure* or *de facto* officer on the other, since if he be a *de facto* officer his acts are binding on the public generally, G.S. 128-6, and are not subject to collateral attack, but may be questioned only in a direct proceeding brought against him for that purpose by the Attorney-General in the name of the State, G.S. 1, Article 41, while if he be a usurper his acts are absolutely void and can be impeached at any time in any proceeding.

**5. Statutes § 1c: Courts § 8—**

Section 29 of Article II of the Constitution of N. C. forbidding the establishment of courts inferior to the Superior Court by any local, private, or special act, did not become a part of the Constitution until it was adopted by the qualified voters of the State in the general election in 1916, and therefore the General Assembly of 1913 acted within its constitutional limits in creating the Special Court of the Town of North Wilkesboro (Chap. 144, Private Laws of 1913), Art. IV, Sections 2, 12, Constitution of N. C.

**6. Public Officers § 9: Judges § 1—**

The mayor of a municipality was constituted a Special Court for the municipality by valid act (Chap. 144, Private Laws of 1913). A duly elected and qualified mayor assumed the duties as judge of the Special Court under claim of authority. By Chap. 1142, Session Laws of 1949, it was provided that said judge should be appointed by the Commissioners of the town, and that he should hold no other office. The town commissioners failed to appoint a judge under the provisions of this act. *Held:* A sentence imposed by the mayor acting as judge of the Special Court cannot be collaterally attacked in *habeas corpus*, since he was at least a judge *de facto* if not *de jure*, G.S. 128-6, G.S. 128-7.

Review upon *certiorari* of judgment of *Rudisill, J.,* at Chambers in Newton, on 23 November, 1949, in *habeas corpus* proceeding involving the detention of the petitioner, Grace Hayes Wingler, in the common jail of Wilkes County.

The Special Court of the Town of North Wilkesboro was created by Chapter 144 of the Private Laws of 1913, which provides that "the Mayor of the Town of North Wilkesboro is hereby constituted a Special Court" with jurisdiction of all misdemeanors committed within the municipality or within two miles from its corporate limits, and that "any person convicted. . . in said court shall have the right of appeal to the Superior Court of Wilkes County," where trial is to be had *de novo*. This statute was amended by Chapter 1142 of the 1949 Session Laws in

these particulars: (1) "In lieu of the mayor acting in the capacity of judge of the special court constituted under the provisions of this act . . ., the judge of said court shall be appointed by the Town Commissioners of the Town of North Wilkesboro . . . Said judge shall be appointed as herein provided on the First Tuesday after the First Monday in June, 1949, and biennially thereafter, and shall hold office for a period of two years or until his successor is duly elected and qualified"; and (2) "the Judge of said court shall hold no other office either with the State of North Carolina, the County of Wilkes, or the Town of North Wilkesboro."

R. T. McNeil was elected Mayor of the Town of North Wilkesboro for a term of two years on 2 May, 1949, and within five days thereafter was admitted and sworn into such office by the proper authority. Ever since that time, he has performed all of the duties devolving upon the Mayor of the Town of North Wilkesboro and the Judge of the Special Court of the Town of North Wilkesboro under the claim that he has the authority to serve in such capacities by virtue of his election and subsequent qualification as Mayor. The Town Commissioners of the Town of North Wilkesboro have never undertaken to appoint any person Judge of the Special Court under the provisions of Chapter 1142 of the 1949 Session Laws.

On 3 October, 1949, the petitioner, Grace Hayes Wingler, was convicted in the Special Court of the Town of North Wilkesboro upon a warrant charging her with the commission of a misdemeanor within the bounds of the municipality. Mayor McNeil, acting as Judge of the Special Court, pronounced sentence against the petitioner, and she appealed to the Superior Court of Wilkes County. Mayor McNeil committed her to the common jail of Wilkes County pending her appeal because of her inability to give a bond with surety for her appearance at the next term of the Superior Court.

The petitioner then obtained a writ of *habeas corpus* from Judge Rudisill, upon a petition alleging that under Chapter 1142 of the 1949 Session Laws Mayor McNeil had no authority or capacity to act as Judge of the Special Court of the Town of North Wilkesboro after the first Monday in June, 1949, *i.e.*, 7 June, 1949, and that by reason thereof her trial, sentence, appeal, and commitment were void. At the hearing on the return to the writ of *habeas corpus*, Judge Rudisill accepted the contention of the petitioner as valid, and entered judgment discharging the petitioner from custody.

On the first day of the present term of this Court, the Attorney-General, acting for the State, applied for a writ of *certiorari*, alleging error in the judgment ordering the petitioner released from custody. The application was allowed, and the writ accordingly issued.

*Attorney-General McMullan for the State.*

*Trivette, Holshouser & Mitchell and J. H. Whicker, Jr., for the Town of North Wilkesboro, amicus curiæ.*

ERVIN, J.   A person who undertakes to exercise the functions of a judicial office on a particular occasion may be a judge *de jure,* or a judge *de facto,* or a mere intruder.

Since he is exercising the office of a judge as a matter of right, a judge *de jure* meets this three-fold test: (1) He possesses the legal qualifications for the judicial office in question; (2) he has been lawfully chosen to such office; and (3) he has qualified himself to perform the duties of such office according to the mode prescribed by law.   These things being true, he has a complete title to his office; his official acts are valid; and he cannot be ousted.   *Norfleet v. Staton,* 73 N.C. 546, 21 Am. R. 479.

A judge *de facto* may be defined as one who occupies a judicial office under some color of right, and for the time being performs its duties with public acquiescence, though having no right in fact.   Cooley: Constitutional Limitations (8th Ed.), Vol. 2, page 1355.   A person will be deemed to be a *de facto* judge when, and only when, these four conditions concur: (1) He assumes to be the judge of a court which is established by law; (2) he is in possession of the judicial office in question, and is discharging its duties; (3) his incumbency of the judicial office is illegal in some respect; and (4) he has at least a fair color of right or title to the judicial office, or has acted as its occupant for so long a time and under such circumstances of reputation or acquiescence by the public generally as are calculated to afford a presumption of his right to act and to induce people, without inquiry, to submit to or invoke official action on his part on the supposition that he is the judge he assumes to be. For all practical purposes, a judge *de facto* is a judge *de jure* as to all parties other than the State itself.   His right or title to his office cannot be impeached in a *habeas corpus* proceeding or in any other collateral way.   It cannot be questioned except in a direct proceeding brought against him for that purpose "by the Attorney-General in the name of the State, upon his own information or upon the complaint of a private person," pursuant to the statutes embodied in Article 41 of Chapter 1 of the General Statutes.   So far as the public and third persons are concerned, a judge *de facto* is competent to do whatever may be done by a judge *de jure.*   In consequence, acts done by a judge *de facto* in the discharge of the duties of his judicial office are as effectual so far as the rights of third persons or the public are concerned as if he were a judge *de jure.*   The principles enunciated in this paragraph arose at common law, and have been accorded full recognition in this State.   *S. v. Harden,* 177 N.C. 580, 98 S.E. 782; *S. v. Shuford,* 128 N.C. 588, 38 S.E. 808;

*S. v. Turner,* 119 N.C. 841, 25 S.E. 810; *Hughes v. Long,* 119 N.C. 52, 25 S.E. 743; *Van Amringe v. Taylor,* 108 N.C. 196, 12 S.E. 1005, 23 Am. S. R. 51, 12 L.R.A. 202; *S. v. Lewis,* 107 N.C. 967, 12 S.E. 457, 13 S.E. 247, 11 L.R.A. 100; *S. v. Speaks,* 95 N.C. 689; *Norfleet v. Staton, supra; Ellis v. Institution,* 68 N.C. 423; *Culver v. Eggers,* 63 N.C. 630; *Swindell v. Warden,* 52 N.C. 575; *Commissioners v. McDaniel,* 52 N.C. 107; *Burton v. Patton,* 47 N.C. 124, 62 Am. D. 194; *Gilliam v. Reddick,* 26 N.C. 368; *Burke v. Elliott,* 26 N.C. 355, 42 Am. D. 142.

Moreover, the Legislature has conferred express approval upon the *de facto* doctrine in the case of persons actually inducted into office in the manner prescribed by law. A statute, which had its genesis in Chapter 38 of the Laws of 1844 and is now codified as G.S. 128-6, provides that "any person who shall, by the proper authority, be admitted and sworn into any office, shall be held, deemed, and taken, by force of such admission, to be rightfully in such office until, by judicial sentence, upon a proper proceeding, he shall be ousted therefrom, or his admission thereto be, in due course of law, declared void."

A usurper is one who undertakes to act officially without any actual or apparent authority. Since he is not an officer at all or for any purpose, his acts are absolutely void, and can be impeached at any time in any proceeding. *S. v. Shuford, supra; Van Amringe v. Taylor, supra; Norfleet v. Staton, supra; Keeler v. New Bern,* 61 N.C. 505.

Practical procedural rules have been devised to enforce these principles in actual litigation. Where the validity of an act of a person acting in a judicial office on a particular occasion is assailed in a collateral proceeding before another court on the theory that he had no right to the office, the court may inquire into his title to the judicial office far enough to determine whether he was a judge *de jure,* or a judge *de facto,* or a mere usurper at the time he performed the act in question. If such inquiry reveals that he was at least a judge *de facto* at that time, the court can proceed no further in its investigation of the title to the office; for the official act of a judge *de facto* is as binding as that of a judge *de jure. U. S. v. Alexander,* 46 F. 728.

When these legal principles are laid alongside the record in this proceeding, it is immediately evident that Mayor McNeil did not act as a mere usurper in trying the petitioner and committing her to jail. He was undoubtedly a judge *de jure* from the time of his qualification as Mayor until 7 June, 1949. As the Town Commissioners did not appoint anyone to succeed him in the judgeship of the Special Court under Chapter 1142 of the 1949 Session Laws, a cogent argument might be advanced to sustain the proposition that he has remained a judge *de jure* since 7 June, 1949, under G.S. 128-7, which stipulates that "all officers shall continue in their respective offices until their successors are elected

or appointed, and duly qualified." *Markham v. Simpson,* 175 N.C. 135, 95 S.E. 106.

Be this as it may, it cannot be gainsaid that Mayor McNeil was at least a judge *de facto* when he took the official action resulting in this proceeding. Since Section 29 of Article II forbidding the passage of "any local, private, or special act or resolution relating to the establishment of courts inferior to the Superior Court" did not become a part of the Constitution of North Carolina until it was adopted by the qualified voters of the State in the general election in 1916, the General Assembly of 1913 acted within constitutional limits in creating the Special Court of the Town of North Wilkesboro by private act. N. C. Const., Art. IV, Sections 2, 12. This being true, the record makes it plain that Mayor McNeil assumed the judgeship of a court established by law; that he actually occupied the judgeship and discharged its duties; and that he had at least a fair color of right or title to such judgeship under Chapter 144 of the Private Laws of 1913 and G.S. 128-7 by virtue of his election and qualification as Mayor. Hence, he was a judge *de facto* under common law principles when he tried the petitioner and sent her to jail. This conclusion is valid even if it be taken for granted that on its effective date, *i.e.,* 7 June, 1949, Chapter 1142 of the 1949 Session Laws caused Mayor McNeil's term as judge of the Special Court to expire, made the mayoralty and the judgeship incompatible offices, and rendered Mayor McNeil ineligible for the judgeship. Where the requisite conditions exist, a person is a judge *de facto* although he holds over after his term has expired, *Threadgill v. Railroad,* 73 N.C. 178; *Cary v. State,* 76 Ala. 78; *Territory v. Mattoon,* 21 Hawaii 672; *Feck v. Commonwealth,* 264 Ky. 556, 95 S.E. 2d 25; *Sheehan's Case,* 122 Mass. 445, 23 Am. Rep. 374; *Windom v. City of Duluth,* 137 Minn. 154, 162 N.W. 1075; *Carli v. Rhener,* 27 Minn. 296, 7 N.W. 139; *Youmans v. Hanna,* 35 N.D. 479, 161 N.W. 797, Ann. Cas. 1917 E, 263; *Cromer v. Boinest,* 27 S.C. 436, 3 S.E. 849; or although he holds incompatible offices, *Sheehan's Case, supra; Woodside v. Wagg,* 71 Me. 207; *Marta v. State* (Tex. Cr.), 193 S.W. 323; or although he is ineligible for the office, *In re Russell,* 60 N.C. 388; *In re Danford,* 157 Cal. 425, 108 Pac. 322; *Sheehan's Case, supra; Blackburn v. State,* 40 Tenn. 690.

The act of Mayor McNeil in trying the petitioner and committing her to jail was also immune to collateral attack under G.S. 128-6. He had been admitted and sworn into his dual office as Mayor and Judge by the proper authority, and should have been "held, deemed, and taken, by force of such admission," to have been rightfully in his office when he acted as judge in the petitioner's case.

The *de facto* doctrine is indispensable to the prompt and proper dispatch of governmental affairs. Endless confusion and expense would

ensue if the members of society were required to determine at their peril the rightful authority of each person occupying a public office before they invoked or yielded to his official action. An intolerable burden would be placed upon the incumbent of a public office if he were compelled to prove his title to his office to all those having occasion to deal with him in his official capacity. The administration of justice would be an impossible task if every litigant were privileged to question the lawful authority of a judge engaged in the full exercise of the functions of his judicial office.

The acts of Mayor McNeil were effectual in law; for he was at least a judge *de facto* when they were performed. This being so, it was error to permit the collateral attack upon his title to the judgeship, and to sustain such attack on the theory that he acted without authority. The judgment discharging the petitioner from custody is

Reversed.