IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-1069

Filed 6 August 2024

Anson County, Nos. 23CVS82

STATE OF NORTH CAROLINA ex rel. GERALD CANNON, in his individual capacity and his official capacity As Sheriff of Anson County, Plaintiff,

v.

ANSON COUNTY; ANSON COUNTY BOARD OF COMMISSIONERS; JARVIS T. WOODBURN, in his official capacity; JEFFREY BRICKEN, in his official capacity; ROBERT MIMS, JR., in his official capacity; LAWRENCE GATEWOOD, in his official capacity; JAMES CAUDLE, in his official capacity; PRISCILLA LITTLE, in her official capacity; DAVID HAROLD C. SMITH, in his official capacity; SCOTT HOWELL, Defendants.

Appeal by plaintiff from order entered 10 May 2023 by Judge Stephan R. Futrell in Anson County Superior Court. Heard in the Court of Appeals 28 May 2024.

*Leitner, Bragg & Griffin, PLLC, by Ellen A. Bragg and Thomas Leitner, for plaintiff-appellant.*

*Ellis & Winters LLP, by Jonathan D. Sasser and Jeffrey Steven Warren, for defendant-appellee Scott Howell.*

*Cranfill Sumner LLP, by Patrick H. Flanagan and Steven A. Bader, for defendant-appellee Anson County, et al.*

*Scott Forbes, for defendant-appellee Anson County, et al.*

FLOOD, Judge.

Gerald Cannon ("Plaintiff") appeals from an order granting Defendants' motions for judgment on the pleadings. After careful review, we conclude the trial court did not err by granting Defendants' motions for judgment on the pleadings

because the face of Plaintiff's quo warranto complaint shows the Anson County Board of Commissioners (the "Board") unlawfully appointed Plaintiff as Anson County Sheriff.

## I. **Factual and Procedural Background**

On 21 September 2022, Anson County Sheriff Landric Reid passed away during his term of office. On 4 October 2022, the Board appointed Chief Deputy Scott Howell ("Defendant Howell") to fulfill the remainder of Sheriff Reid's term, which was set to expire on 5 December 2022.[1] Prior to his death, Sheriff Reid had won the Democratic nomination for Sheriff and was on the 8 November 2022 general election ballot for Sheriff. Due to the short amount of time between Sheriff Reid's death and the general election, Sheriff Reid was unable to be removed from the ballot and won re-election in November 2022, thereby creating a vacancy for his second term.

On 1 December 2022, the Board convened for a "special meeting" to discuss the looming Sheriff vacancy. The commissioners present during the special meeting were Chairman Jarvis T. Woodburn, Vice Chair Robert Mims, Vancine Sturdivant, Harold C. Smith, Dr. Sims, Lawrence Gatewood, and J.D. Bricken. During the special meeting, Commissioner Bricken asked the Anson County Attorney, Scott Forbes, whether the Board had "authority to appoint a sheriff to fulfill an upcoming vacancy." According to the minutes from the special meeting, "Attorney Forbes advised that [a]

---

[1] Plaintiff's quo warranto complaint indicated that the term expired at midnight on 4 December 2022, but deposition testimony confirmed the term expired at midnight on 5 December 2022.

Closed Session would be the more appropriate venue to answer this question as it is a legal matter from which he assumes litigation is likely to follow." Due to the attorney-client privilege between Attorney Forbes and the Board, Attorney Forbes advised that the Board would need to vote before having him address the question in an open session. The Board subsequently voted to go into a closed session. After the Board came out of the closed session, the Board voted six to one to conclude the special meeting, as they had determined in the closed session that the issue of appointing a sheriff could wait until the Board's regularly scheduled meeting to be held on 6 December 2022. Following the vote, Commissioner Woodburn announced to the open session audience that there "would be no action taken today and 'this matter will be resolved on December 6.'"

On 3 December 2022, the Democratic Party of Anson County (the "Democratic Party") selected Plaintiff to fill the vacancy of the Anson County Sheriff. The Democratic Party was operating under the belief that, pursuant to N.C. Gen. Stat. § 162-5.1 (b) (2021), the Board was required to appoint the person recommended by the Democratic Party, as Sheriff Reid had been elected as the Democratic nominee. This section of the statute, however, applies only to select counties, of which Anson County is not included.

Despite the Board concluding at the special meeting on 1 December 2022 that no action needed to be taken until the 6 December 2022 regular meeting, Commissioner Woodburn called for an "emergency meeting" on 5 December 2022 to

address the vacancy for Sheriff. Commissioner Woodburn called the 5 December meeting after he was contacted by Commissioner Smith, who represented that a board member of the Democratic Party had "told him that the sheriff's position needed to be dealt with[.]" Commissioner Woodburn thought that "made sense" as there would be a vacancy as of 5 December 2022.[2] On 5 December 2022, at 5:29 p.m. the Clerk to the Board—Denise Cannon—sent an email to all six commissioners, notifying them that Commissioner Woodburn had called the 5 December meeting. Cannon also called all six board members between 4:56 p.m. and 5:42 p.m. on 5 December 2022, and made contact with five commissioners, but was unable to reach Commissioner Gatewood. The 5 December meeting began at 5:45 p.m. at the Anson County Government Center.

Commissioners Sturdivant and Smith were present in person at the 5 December meeting, and Commissioners Woodburn and Sims were present via conference call. Commissioner Bricken is not included on the list of commissioners who were present, but the meeting minutes reflect that he participated in the meeting via conference call; however, he lost contact at some point prior to the vote. Commissioners Smith, Sturdivant, Sims, and Woodburn voted to appoint Plaintiff to

---

[2] Complicating the vacancy timing and date, Commissioner Woodburn stated in his deposition that after being contacted by Commissioner Smith on 5 December, Commissioner Woodburn thought the meeting was necessary because "the sheriff's position needed to be dealt with because, you know, as of midnight on the 5th, we wouldn't have a sheriff." As this occurred on 5 December, a term expiring at midnight would be later that same night.

fill the vacant Sheriff's position. Commissioner Bricken was called to vote, but was unresponsive. Plaintiff won the nomination with four out of seven votes and was sworn in as Anson County Sheriff at the close of the 5 December meeting.

Later that evening, Attorney Forbes contacted Plaintiff and Defendant Howell. Attorney Forbes notified Plaintiff that he interpreted the 5 December meeting as an illegal meeting because there was no "emergency," and Plaintiff's appointment was therefore invalid. Attorney Forbes told Defendant Howell that because the meeting was unlawful, Defendant Howell was still the Sheriff.

On 6 December 2022, Plaintiff filed a complaint in Anson County Superior Court seeking a declaratory judgment. He also filed a motion for a preliminary injunction. In his complaint and motion, Plaintiff requested that the trial court declare him as Sheriff and prohibit the Board from preventing him from taking office as Sheriff. A hearing was held in which Attorney Forbes informed the trial court that he had "retracted" the statement that he made to Plaintiff the previous evening because the "[c]ounty was not going to take a position as to this issue and it was for the court" to decide. In a subsequent deposition, Attorney Forbes represented that he did not "know that [he necessarily] retracted" the statement, but only meant to convey that he did not have the authority to make the statement because it was for the courts to decide.

Following the hearing on Plaintiff's motion for a preliminary injunction, the trial court denied Plaintiff's motion.

Later that day, at 6:00 p.m., the Board convened for their regularly scheduled meeting. Present at this meeting were Commissioners Bricken, Mims, Woodburn, Smith, and Gatewood. Also present were Commissioners Priscilla Little and Jamie Caudle, who had been sworn in at the start of the meeting, replacing out-going Commissioners Sims and Sturdivant.

During the meeting, Commissioner Gatewood motioned to appoint Defendant Howell as Anson County Sheriff "effective immediately and extending through the next four years." Commissioner Caudle seconded this motion. Commissioner Smith questioned the legality of the motion and inquired as to whether there was even a vacancy given Plaintiff's appointment the previous day, but no further discussion was had.[3] The Board voted six to one—Commissioner Smith being the one—to bring to a vote the motion to appoint Defendant Howell as Sheriff. The motion to appoint Defendant Howell as Sheriff was repeated, and the Board voted four to three to appoint Defendant Howell as Anson County Sheriff.

On 7 December 2023, Plaintiff filed an amended complaint for declaratory judgment, and motion for preliminary injunction and permanent injunction, again requesting the trial court declare him Anson County Sheriff. The amended complaint

---

[3] The minutes from the 6 December meeting indicate the Board went into a closed session to consult with Attorney Forbes about "a potential or actual claim, administrative procedure, or judicial action" that could be brought pursuant to N.C. Gen. Stat. § 143-318.11(a)(3). As this was a closed session, however, there is no evidence in the Record showing what was said during that discussion or whether it addressed Commissioner Smith's concerns.

alleged that Attorney Forbes informed Plaintiff that the 5 December "meeting was not illegal, and that Plaintiff was appointed as Sheriff for Anson County[.] . . . Further, [Attorney Forbes] stated . . . that the [5 December meeting] was valid and legal and that was the reasoning for retracting his previous statements." During Attorney Forbes' deposition, however, he emphatically denied ever stating that the 5 December meeting was "valid and legal."

The trial court denied Plaintiff's request to declare him Anson County Sheriff, and Defendant Howell was sworn in as Sheriff. In denying Plaintiff's request, the trial court advised Plaintiff that the appropriate action would be a quo warranto.

On 19 December 2023, Plaintiff requested that the North Carolina Attorney General grant Plaintiff leave to file a quo warranto action. On 4 January 2023, the North Carolina Department of Justice declined to bring a quo warranto action against Defendant Howell on behalf of Plaintiff but permitted Plaintiff to file such an action in the name of the State.

On 10 February 2023, Plaintiff filed a quo warranto complaint in Anson County Superior Court against Anson County, the Board, all seven commissioners in their official capacities (collectively "Defendant Anson County"), and Defendant Howell (collectively "Defendants"). The quo warranto complaint alleged that the Board did not have the authority to appoint Defendant Howell to the office of Anson County Sheriff because no vacancy existed after the 5 December meeting.

On 16 March 2023, Defendant Howell filed an answer to Plaintiff's quo

warranto complaint, asserting Plaintiff failed to state a claim upon which relief could be granted. On 28 March 2023, Defendant Anson County filed an amended answer and asserted a counterclaim for declaratory judgment, arguing the 5 December meeting was not in fact an "emergency meeting," and as such, the meeting was not properly noticed.

On 17 April 2023, Defendant Howell filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the North Carolina Rules of Civil Procedure. On 21 April 2023, Defendant Anson County filed a separate motion for judgment on the pleadings. Defendants argued the 5 December meeting was not properly noticed, and the Board did not have a proper quorum because only two commissioners attended in person; therefore, Plaintiff's appointment to Sheriff was unlawful.

On 26 April 2023, Plaintiff filed a motion for summary judgment arguing there were no genuine issues of material fact, and he was entitled to judgment as a matter of law. Plaintiff also filed a motion to dismiss Defendant Anson County's counterclaim.

On 8 May 2023, the trial court held a hearing on Defendants' motions for judgment on the pleadings, Plaintiff's motion to dismiss Defendant Anson County's counterclaim for declaratory judgment, and Plaintiff's motion for summary judgment. At the hearing, all parties agreed that whichever motion the trial court ruled on would be dispositive of all of the motions. On 10 May 2023, the trial court issued an order granting Defendants' motions for judgment on the pleadings. On 5 June 2023,

Plaintiff filed a notice of appeal to this Court.

## II. Jurisdiction

This Court has jurisdiction to review this appeal from a final judgment pursuant to N.C. Gen. Stat. § 7A-27(b) (2023).

## III. Analysis

On appeal, Plaintiff argues that it was an error for the trial court to grant Defendants' motions for judgment on the pleadings. Plaintiff also argues it was an error to deny Plaintiff's motion to dismiss Defendant Anson County's counterclaim and Plaintiff's motion for summary judgment. We conclude that the trial court did not err in granting judgment on the pleadings in favor of Defendants, as the face of Plaintiff's quo warranto complaint shows he was appointed at an unlawful meeting where there was neither a true "emergency" nor a quorum. We therefore do not reach Plaintiff's motion to dismiss Defendant Anson County's counterclaim nor his motion for summary judgment.

### A. Quo Warranto Action

Plaintiff argues the Board's 5 December appointment of Plaintiff to fill the term of Sheriff "should be deemed valid until and only if a proper proceeding is initiated and a court concludes that the appointment shall be declared void." Plaintiff further argues that in order to initiate the proper proceeding to contest an action of the Board, a person must file suit under N.C. Gen. Stat. § 143-318.16A and, as no person ever filed such a suit to challenge Plaintiff's appointment, he remains the

lawful Sheriff. We disagree.

A quo warranto action may be brought by the Attorney General in the name of the State, or the Attorney General may grant a private person leave to bring an action in the name of the State, "[w]hen a person usurps, intrudes into, or unlawfully holds or exercises any public office . . . ." N.C. Gen. Stat. § 1-515(1) (2023); *see also Swaringen v. Poplin*, 211 N.C. 700, 702, 191 S.E. 746, 747 (1937) ("One of the chief purposes of quo warranto . . . is to try the title to an office."). "A usurper is one who undertakes to act officially without any actual or apparent authority." *In re Wingler*, 231 N.C. 560, 564, 58 S.E.2d 372, 375 (1950).

Here, Plaintiff filed a quo warranto complaint arguing Defendant Howell's appointment to Anson County Sheriff was "void and of no effect" because no one challenged Plaintiff's 5 December appointment to Sheriff, and there was therefore no vacancy for Defendant Howell to fill. Moreover, in his appellate brief, Plaintiff represented—without citing to legal support—that a quo warranto action is "used to resolve a dispute over whether a specific person has the legal right to hold the public office that he or she occupies; in this instance, this action was brought because [Defendant] Howell and Anson County were usurping the office of [] Sheriff." In Plaintiff's own words, when the trial court reviewed Plaintiff's quo warranto complaint, it was required to "resolve a dispute over whether a specific person has the legal right to hold" the title of Sheriff, *i.e.*, to determine whether Defendant Howell usurped Plaintiff's position as Sheriff. To make this determination, the trial

court would have to determine if Plaintiff was in fact lawfully appointed to the position of Sheriff during the 5 December meeting. If Plaintiff was not lawfully appointed, Defendant Howell could not have usurped Plaintiff's position. If, on the other hand, Plaintiff had been lawfully appointed, Defendant Howell's appointment would have usurped Plaintiff's position. *See In re Wingler*, 231 N.C. at 564, 58 S.E.2d at 375.

Accordingly, because Plaintiff placed the issue of his appointment up for judicial review by filing the quo warranto complaint, Defendants were not required to challenge Plaintiff's 5 December appointment by filing suit pursuant to N. C. Gen. Stat. § 143-318.16A. Having concluded the trial court could determine whether Plaintiff was lawfully appointed to Sheriff, and Defendants were not required to file their own suit challenging Plaintiff's 5 December appointment, we now turn to whether the trial court erred by granting Defendants' motions for judgment on the pleadings.

**B. Judgment on the Pleadings**

In challenging the trial court's order granting Defendants' motions for judgment on the pleadings, Plaintiff makes no arguments explaining why his 5 December appointment was lawful. Instead, he again argues that Defendants were required to challenge Plaintiff's appointment under N.C. Gen. Stat. § 143-318.16A, and absent any such challenge, Plaintiff's quo warranto complaint shows he was entitled to assume the role of Anson County Sheriff. As Plaintiff has generally

challenged the trial court's order, we will conduct our review to determine whether the order was made in error.

Defendants argue the trial court did not err in granting judgment on the pleadings because the face of Plaintiff's quo warranto complaint shows that he is not entitled to the relief sought because his appointment to the position of Sheriff occurred at an unlawful meeting in which improper procedure was followed. We agree.

### 1. Standard of Review

We review a trial court's decision on a grant of judgment on the pleadings *de novo*. *N.C. Farm. Bureau Mut. Ins. Co. Inc. v. Hebert*, ___N.C. ___, ___, 898 S.E.2d 718, 724 (2024) (alterations in original) (citations omitted). A party who files for a judgment on the pleadings "must show that 'the [pleadings] . . . fail[] to allege facts sufficient to state a cause of action or admit[] facts which constitute a complete legal bar' to a cause of action." *Id.* at __, 898 S.E.2d at 724.

> In determining whether to grant a motion for judgment on the pleadings, [t]he trial court is required to view the facts and permissible inferences in the light most favorable to the nonmoving party. All well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false. All allegations in the nonmovant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial are deemed admitted by the movant for the purposes of the motion.

*Benigno v. Sumner Const., Inc.*, 278 N.C. App. 1, 4, 862 S.E.2d 46, 49–50 (2021)

(alteration in original) (citation omitted).  When considering a motion for judgment on the pleadings, "[t]he trial judge is to consider only the pleadings and any attached exhibits, which become part of the pleadings." *Minor v. Minor*, 70 N.C. App. 76, 78, 318 S.E.2d 865, 867 (1984).

## 2. Lawfulness of the 5 December Meeting

In arguing that the 5 December meeting was procedurally improper, Defendants contend, more specifically, that the Board acted unlawfully when it called an "emergency meeting" without a true emergency existing and when it appointed Plaintiff without a quorum.

"In order to take valid action, a board of county commissioners must act . . . in a meeting duly held as prescribed by law." *Land-of-Sky Reg'l Council v. Henderson Cnty.*, 78 N.C. App. 85, 89, 336 S.E.2d 653, 656 (1985).

### a. *Nature of the 5 December Meeting*

We first address Defendants' argument that there was no "emergency" when the meeting was called.

As defined by the Open Meetings Laws, "an 'emergency meeting' is one called because of generally unexpected circumstances that require immediate consideration by the public body." N.C. Gen. Stat. § 143-318.12(f) (2023).

> For any other meeting, except for an emergency meeting, the public body shall cause written notice of the meeting stating its purpose (i) to be posted on the principal bulletin board of the public body or . . . at the door of its usual meeting room, and (ii) to be mailed, e-mailed, or delivered

to each newspaper, wire service, radio state, and television station that has filed a written request for notice with the clerk or secretary of the public body[.] . . . This notice shall be posted and mailed, e-mailed, or delivered at least 48 hours before the time of the meeting.

N.C. Gen. Stat. § 143-318.12(b)(2).

"If any vacancy occurs in the office of sheriff, the coroner of the county shall execute all process directed to the sheriff until the first meeting of the board of county commissioners next succeeding such vacancy[.]" N.C. Gen. Stat. § 162-5(a) (2023). "In those counties where the office of coroner has been abolished, the chief deputy sheriff . . . shall perform all the duties of the sheriff until the board of county commissioners appoint some person to fill the unexpired term." N.C. Gen. Stat. § 152.5(b).

Here, the face of Plaintiff's quo warranto complaint shows that the 5 December meeting was not an "emergency meeting" because, first, it states that the Board met on 1 December 2022 to discuss the looming Anson County Sheriff vacancy. Attached to the quo warranto complaint were the 1 December meeting's minutes, which show the Board was aware that there would be a vacancy as of 5 December, but determined no action was needed on the subject until the regularly scheduled 6 December meeting. Thus, there was not a "generally unexpected circumstance" that required immediate consideration by the Board. *See* N.C. Gen. Stat. § 143-318.12(f).

Second, the quo warranto complaint represented that Defendant Howell had been appointed to assume the role of interim Sheriff following Sheriff Reid's untimely

death. Defendant Howell, therefore, would have remained in the interim role of Sheriff until such time when the Board met at their next regularly scheduled meeting and appointed someone to the office of Anson County Sheriff. *See* N.C. Gen. Stat. § 162-5(a).

As the 5 December meeting was not an "emergency meeting," the Board was required to give notice of the meeting forty-eight hours in advance. Attached to Plaintiff's quo warranto complaint is an email sent by Clerk Cannon on 5 December at 5:29 p.m. notifying the commissioners that Commissioner Woodburn had called an "emergency meeting." The meeting's minutes reflect that the meeting began just sixteen minutes later—far short of the required forty-eight hours. *See* N.C. Gen. Stat. § 143-318.12(b)(2).

Accordingly, the face of Plaintiff's quo warranto complaint shows that the 5 December meeting was not an "emergency meeting" as no unexpected circumstances existed, and the public therefore was not properly noticed. *See* N.C. Gen. Stat. § 143-318.12(b), (f). Thus, the trial court did not err in granting Defendants' motions for judgment on the pleadings. *See Hebert*, ___N.C. at ___, 898 S.E.2d at 724.

b. *Quorum*

Even if the 5 December meeting had qualified as an emergency meeting, the Board lacked the quorum necessary to lawfully appoint Plaintiff to Sheriff. Plaintiff pled in his quo warranto complaint that the Board voted on his appointment with a quorum because he received four out of seven votes. In Defendant Howell's motion

for judgment on the pleadings, he argued, conversely, that the "face of the [c]omplaint, together with the exhibits attached, reveals Plaintiff is not entitled to the relief he seeks" because, in relevant part, "[t]his hastily-called meeting was personally attended by only two members of the seven-member Board. Chairman Woodburn himself failed to show up." Defendant Anson County likewise argued in its motion for judgment on the pleadings that "[t]he [Board] did not have a proper quorum to vote during the [5 December meeting] with only two of the seven [] Commissioners present at the meeting."

"A majority of the membership of the board of commissioners constitutes a quorum[,]" which is required for an action of a public board to be valid. N.C. Gen. Stat. § 153A-43(a) (2023); *see also Cleveland Cotton Mills v. Comm'rs of Cleveland Cnty.*, 108 N.C. 678, 680–81, 13 S.E.2d 271, 272 (1891) ("[A]n act . . . done by an indefinite body . . . is valid if passed by a majority of those present at a legal meeting."). In Anson County, there are seven members of the Board of Commissioners. A quorum therefore consists of a majority, or four commissioners. *See* N.C. Gen. Stat. § 153A-43(a).

Pursuant to Section 166A-19.24, "[n]otwithstanding any other provision of law, upon issuance of a declaration of emergency under [N.C. Gen. Stat. §] 166-19.20, any public body within the emergency area may conduct remote meetings[.]" N.C. Gen. Stat. § 166A-19.24(a) (2023). A "remote meeting" is "[a]n official meeting . . . with between one and all of the members of the public body participating by simultaneous

communications[,]" *i.e.* by telephone. N.C. Gen. Stat. § 166A-19.24 (i)(3)–(4). If a member participates in a meeting remotely during a state of emergency pursuant to N.C. Gen. Stat. § 166A-19.24(a), that member "shall be counted as present for the purposes of whether a quorum is present[.]" N.C. Gen. Stat. § 153A-43(b).

In this case, the 5 December meeting minutes Plaintiff attached to the quo warranto complaint as an exhibit do not lend legal or factual support to the contention that the Board had a quorum. To have a proper quorum on 5 December 2022, the Board was required to have four commissioners physically present to appoint Plaintiff to the office of Anson County Sheriff because there was no state of emergency in effect that would have permitted remote participation. *See* Exec. Order No. 267 (August 15, 2020) (rescinding Executive Order 116 that put in place a state of emergency in March 2020 and "[a]ll other provisions of Executive Order No. 116, and all other Executive Orders conditioned upon the State of Emergency declared in Executive Order No. 116"); *see also* N.C. Gen. Stat. § 166A-19.24(a). Despite this, only two of the seven total commissioners—Commissioners Sturdivant and Smith—were physically present at the 5 December meeting. The 5 December meeting minutes clearly show that Commissioners Woodburn, Sims, and Bricken participated in the 5 December meeting by conference call, thus rendering it a "remote meeting" because three of the participants were using simultaneous communication to participate. *See* N.C. Gen. Stat. § 166A-19.24 (i)(3)–(4). Plaintiff's appointment, therefore, passed with only two out of seven votes present—which is not a quorum. Without a quorum,

- 17 -

Plaintiff was not lawfully appointed to the position of Anson County Sheriff, and the Board therefore had a vacancy in which to appoint Defendant Howell to fill. *See Cleveland Cotton Mills*, 108 N.C. at 680–81, 13 S.E.2d at 272.

Accordingly, the face of Plaintiff's quo warranto complaint, along with the attached exhibits, show Plaintiff was not appointed to Sheriff by a quorum of the Board, in violation of N.C. Gen. Stat. § 153A-43(a). The trial court, therefore, did not err in granting Defendants' motion for judgment on the pleadings. *See Hebert*, ___N.C. at ___, 898 S.E.2d at 724.

As Plaintiff's quo warranto complaint demonstrates that the 5 December meeting was not an emergency meeting, nor did the Board have a quorum, Defendants have sufficiently shown that Plaintiff's quo warranto complaint "admits facts which constitute a complete legal bar." *See id.* at __, 898 S.E.2d at 724. The trial court therefore did not err by granting Defendants' motions for judgment on the pleadings.

## IV. Conclusion

We conclude the trial court did not err in granting Defendants' motions for judgment on the pleadings because the face of Plaintiff's quo warranto complaint demonstrated that he was not lawfully appointed to the position of Anson County Sheriff on 5 December 2022 as there was no emergency necessitating the meeting and the Board lacked a quorum at the meeting.

AFFIRMED.

Judge GRIFFIN concurs.

Judge THOMPSON dissents in a separate writing.

No. COA23-1069–*State of N. C. v. Anson Cnty.*

THOMPSON, Judge, dissenting.

The dispositive question presented by this case is not who holds the title of Anson County Sheriff, but whether the Anson County Board of Commissioners violated the North Carolina Open Meetings Law by appointing and swearing in plaintiff Cannon as the Anson County Sheriff absent an emergency and, therefore, a quorum on 5 December 2022. Because there has been no challenge to the *presumably lawful* actions of "the proper authority" to fill the vacancy, the Anson County Board of Commissioners, "upon a proper proceeding," the statutory remedies set forth in N.C. Gen. Stat. §§ 143-318.16 or 143-318.16A for alleged violations of the Open Meetings Law, I would conclude that the trial court erred in granting defendants' motion on the pleadings, and I respectfully dissent.

North Carolina law presumes that, "[a]ny person who shall, by the proper authority, be admitted and sworn into any office, shall be held, deemed, and taken, by force of such admission, *to be rightfully in such office until*, by judicial sentence, *upon a proper proceeding*, he shall be ousted therefrom, or his admission thereto be, in due course of law, declared void." N.C. Gen. Stat. § 128-6 (2023) (emphases added). It is the public policy of our State that the "public bodies that administer the legislative, policy-making, quasi-judicial, administrative, and advisory functions . . . exist solely to conduct the people's business . . . [and] that the hearings, deliberations, and actions of these bodies be conducted openly." *Id.* § 143-318.9. Our

legislature has provided for *two* remedies for alleged violations of the Open Meetings Law, N.C. Gen. Stat. §§ 143-318.16 and 143-318.16A.

The first remedy allows for "mandatory or prohibitory *injunctions* to enjoin (i) threatened violations of this Article, (ii) the recurrence of past violations of this Article, or (iii) continuing violations of this Article." *Id.* § 143-318.16 (emphasis added). Alternatively, "[a]ny person may institute *a suit* in the superior court requesting the entry of a judgment declaring that any action of a public body was taken, considered, discussed, or deliberated in violation of this Article. Upon such a finding, the court may declare any such action null and void." *Id.* § 143-318.16A(a) (emphasis added). Moreover, "[a] suit seeking declaratory relief under this section *must be commenced within 45 days* following the initial disclosure of the action that the suit seeks to have declared null and void." *Id.* § 143-318.16A(b) (emphasis added). "If the challenged action is recorded in the minutes of the public body, its initial disclosure shall be deemed to have occurred on the date the minutes are first available for public inspection." *Id.* (emphasis added).

Finally, "[i]n making the determination whether to declare the challenged action null and void, the court *shall consider the following and any other relevant factors*" including:

> (1) The extent to which the violation affected the substance of the challenged action;

> (2) The extent to which the violation thwarted or impaired

access to meetings or proceedings that the public had a right to attend;

(3) The extent to which the violation prevented or impaired public knowledge or understanding of the people's business;

(4) Whether the violation was an isolated occurrence, or was a part of a continuing pattern of violations of this Article by the public body;

(5) The extent to which persons relied upon the validity of the challenged action, and the effect on such persons of declaring the challenged action void;

(6) *Whether the violation was committed in bad faith for the purpose of evading or subverting the public policy embodied in this Article.*

*Id.* § 143-318.16A(c) (emphases added).

The majority asserts that "the face of [p]laintiff's quo warranto complaint shows he was appointed at an unlawful meeting where there was neither a true 'emergency' nor a quorum" and "therefore [the majority] do[es] not reach [p]laintiff's motion to dismiss [d]efendant Anson County's counterclaim nor his motion for summary judgment." However, the deficiency in the majority's analysis lies in the fact—established by our legislature— that once an individual has been sworn into public office by the proper authority, they are presumed to be in that office lawfully.

To declare that the action of a public body, the Anson County Board of Commissioners' appointment of plaintiff Cannon as Anson County Sheriff on 5 December 2022, was taken, considered, discussed, or deliberated in violation of the

Open Meetings Law, *somebody* needed to allege so by seeking relief through the appropriate proceedings. Those "proper proceeding[s]," *id.* § 128-6, are an injunction pursuant to N.C. Gen. Stat. § 143-318.16, or "[a] suit seeking declaratory relief under this section [that] must be commenced within 45 days following the initial disclosure of the actions the suit seeks to have declared null and void" pursuant to N.C. Gen. Stat. §143-318.16A(a)-(b). These remedies were not pursued *by anyone.*

Today's majority opinion misapprehends the dispositive issue raised by this case: whether the Anson County Board of Commissioners violated the Open Meetings Law on 5 December 2022 by appointing and swearing in plaintiff Cannon as Anson County Sheriff absent an emergency and, therefore, a quorum? Again, as noted above, our legislature has determined, as a matter of public policy, that the actions of a public body are presumed to be lawful; one who seeks to challenge the actions of a public body for violating the Open Meetings Law has two avenues to do so: by *seeking an injunction* pursuant to N.C. Gen. Stat. § 143-318.16, or by *bringing suit* within the appropriate period of time—forty-five days—pursuant to N.C. Gen. Stat. § 143-318.16A.

Applying the *mandatory* considerations from N.C. Gen. Stat. § 143-318.16A(c), it is possible that the majority is correct, that plaintiff Cannon *may not* have lawfully been sworn in as the Anson County Sheriff because there *may not* have been an

emergency,[4] and thereby not a quorum, at the 5 December 2022 meeting of the Anson County Board of Commissioners. However, this is not the dispositive issue raised by this case, as we need not determine, *at this juncture*, whether Anson County *not having a sheriff* for a period of time, albeit just one day in the instant case, constituted an emergency such that remote attendance of the commissioners at the 5 December 2022 meeting counted for purposes of a quorum,[5] because *nobody pursued the appropriate remedies* for us to address this question.

A proper resolution of plaintiff Cannon's quo warranto action—which alleged that the 6 December 2022 Board of Commissioners "did not have the authority to make any appointment to the office of Anson County Sheriff as no vacancy existed after the [5 December] 2022, appointment of [plaintiff Cannon] to the office of the Anson County Sheriff"—would have agreed with plaintiff Cannon's position. *Even if* plaintiff Cannon was not lawfully appointed and sworn in as Anson County Sheriff on 5 December 2022, there was no legal challenge to plaintiff Cannon's appointment and swearing in pursuant to the appropriate statutory remedies for an alleged violation of the Open Meetings Law.

---

[4] I would posit that the majority's analysis is not correct, that there was an "emergency"; I also note that the statute does not require a "true emergency" as the majority asserts, but simply an "emergency," which the statute defines as "generally unexpected circumstances." N.C. Gen. Stat. § 143-318.12(f).

[5] This question is more appropriately addressed under the mandatory statutory considerations set forth by our legislature to challenges of the actions of a public body; for example, actions that were "committed in bad faith for the purpose of evading or subverting the public policy embodied in this Article." N.C. Gen. Stat. § 143-318.16A(c)(6).

Because no challenge was brought to the *presumably lawful* actions of a *public body*, the Anson County Board of Commissioners, through the proper proceedings—an injunction, or a suit seeking declaratory relief brought within forty-five days following the initial disclosure of the actions the suit seeks to have declared null and void—plaintiff Cannon is the Anson County Sheriff. He became the Anson County Sheriff upon his appointment and swearing in by the proper authority, the Anson County Board of Commissioners, on 5 December 2022; he maintains that title absent a challenge thereto. For these reasons, I would vacate the order of the trial court, award summary judgment in plaintiff Cannon's favor, and I respectfully dissent.